Donald J. MARSHALL, aka Don Marshall, an Individual; DJM Productions, Inc., a Corporation, Plaintiffs-Appellants,

v.

Thomas KLEPPE, Administrator of the Small Business Administration, Defendant-Appellee.

No. 78–1481.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1979.

·Decided Aug. 19, 1980.

As Modified on Denial of Rehearing April 20, 1981.

---

Neal T. Wiener, Los Angeles, Cal., for plaintiffs-appellants.

Philip S. Malinsky, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellee.

Before GOODWIN and WALLACE, Circuit Judges, and FITZGERALD,* District Judge.

WALLACE, Circuit Judge:

Marshall and DJM Productions, Inc. (DJM) appeal from the district court's order granting judgment on the pleadings in favor of the Administrator of the Small Business Administration (SBA Administrator). The case involves claims of Marshall, a black, and DJM that the SBA Administrator, for racially discriminatory reasons, cancelled an SBA minority business loan authorization issued to DJM. The district court ruled that DJM's corporate causes of action were deficient because (1) corporations cannot state a claim alleging civil rights violations and (2) the SBA Administrator's actions regarding loan determinations are discretionary, and hence not reviewable. The district court rejected Marshall's claims on the grounds that (1) Marshall, an individual stockholder, could not maintain a personal suit to recover damages incurred by the corporation, and (2) that Marshall's personal injury claims were barred by the two-year statute of limitations contained in 28 U.S.C. § 2401(b). We reverse.

## I

DJM and Marshall allege that on May 13, 1971, the SBA Administrator executed and delivered to them a loan authorization obligating the SBA to loan DJM $60,000. This loan authorization was obtained pursuant to the SBA's minority businesses program. See 15 U.S.C. § 637(a). The authorization was subject to numerous conditions, including requirements that DJM obtain a $60,000 life insurance policy on Marshall's life, with the SBA named as beneficiary; a loan guarantee to be signed by Marshall personally; and that "[p]rior to each disbursement on account of the Loan, District Director shall be in receipt of evidence satisfactory to him in his sole discretion, that there has been no Adverse Change . . . in the financial or any other condition of Borrow-

* Honorable James M. Fitzgerald, United States District Judge, District of Alaska, sitting by designation.

1. The Supreme Court has repeatedly held "'that the Due Process Clause of the Fifth Amendment forbids the Federal Government

er, which would warrant withholding or not making any such disbursement . . . .."

Marshall and DJM allege that they performed all the conditions of the loan authorization, but that on July 23, 1971, they were notified by the SBA Administrator that the loan to DJM would be cancelled. Marshall and DJM claim that the SBA Administrator's nonperformance caused them to suffer loss of good will and insolvency, to be unable to repay sums borrowed in reliance upon the SBA loan authorization, and to be unable to meet "obligations of the business." In addition, Marshall claims that he incurred personal injuries requiring medical treatment for an ulcer contracted as a result of the discriminatory denial of the loan.

## II

We first consider the SBA Administrator's contentions that the district court correctly dismissed DJM's causes of action on the alternative grounds that corporations cannot state a claim alleging civil rights violations, and that the SBA's actions constituted unreviewable discretion.

### A

The SBA Administrator's first argument is that DJM cannot assert a civil rights claim under the Fifth Amendment. We disagree. DJM and Marshall base their claims for damages directly on the due process clause of the Fifth Amendment,[1] and allege that 28 U.S.C. § 1331(a) provides federal court jurisdiction. After the Supreme Court's recent decision in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), there is no longer any doubt that an individual may assert a private cause of action for damages, based on an alleged violation of the Fifth Amendment's due process clause, against a federal official. See *id.* at 248, 99 S.Ct. at 2278. See also Jacobson v. Tahoe Regional Planning Agency, 566 F.2d 1353, 1358–59 (9th Cir. 1977), rev'd in part and aff'd in part on other grounds sub nom. Lake Country Es-

from denying equal protection of the laws.'" E. g., Davis v. Passman, 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979), quoting Vance v. Bradley, 440 U.S. 93, 94 n.1, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979).

tates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); Bennett v. Campbell, 564 F.2d 329, 332 (9th Cir. 1977). Cf. Butz v. Economou, 438 U.S. 478, 486, 98 S.Ct. 2894, 2900, 57 L.Ed.2d 895 (1978) ("Bivens established that compensable injury to a constitutionally protected interest could be vindicated by a suit for damages invoking the general federal question jurisdiction of the federal court . . .."); Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971) (individual may rest private damages action on Fourth Amendment). Such claims may be brought in federal court pursuant to 28 U.S.C. § 1331(a). Davis v. Passman, supra, 442 U.S. at 244, 99 S.Ct. at 2276. We think that a private cause of action under the Fifth Amendment for damages may also be asserted by DJM, even though it is a corporation.

It has long been clear that corporations are "persons" protected by the equal protection and due process clauses of the Fourteenth Amendment. Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 446, 80 L.Ed. 660 (1936); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925); California Diversified Promotions, Inc. v. Musick, 505 F.2d 278, 283 (9th Cir. 1974). For example, courts have frequently reviewed claims by corporations that state regulations adversely affecting their business activities discriminate in violation of the equal protection clause. See, e. g., Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Railway Express Agency, Inc. v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Pennsylvania Bank & Trust Co. v. Hanisek, 426 F.Supp. 410 (W.D.Pa.1977). The Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."

Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 1228 n.2, 43 L.Ed.2d 514 (1975). See Buckley v. Valeo, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976) (per curiam). In light of the parallel treatment of Fifth and Fourteenth Amendment equal protection claims, we see no reason why corporations should not be accorded the same protection from federal equal protection violations as they are from state violations.

 In Davis v. Passman, supra, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846, the Supreme Court stated:

At least in the absence of "a textually demonstrable constitutional commitment of [an] issue to a coordinate political department," Baker v. Carr, 369 U.S. 186, 217, [82 S.Ct. 691, 710, 7 L.Ed.2d 663] (1962), we presume that justiciable constitutional rights are to be enforced through the courts. And, unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights.

Id. at 242, 99 S.Ct. at 2275. DJM has alleged that the SBA Administrator violated its constitutional rights. Counsel for DJM informs us that DJM's entire contractual relationship with the SBA Administrator was predicated on DJM's eligibility for the minority businesses program.[2] It claims to have suffered financial injury due to racial discrimination directed at both itself and Marshall, its black owner and proprietor. A corporation may suffer injury, actionable under the Fifth Amendment, from unlawful discrimination against its officers and directors in their corporate capacities, or against it because its officers

2. The SBA minority businesses program, 15 U.S.C. § 637(a)(4), applies only to corporations which are at least 51 percent owned by "socially and economically disadvantaged individuals." Id. Such individuals "are those who have been subjected to racial or ethnic preju-

dice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5). We rely on counsel's assertion that the SBA treated DJM as a minority business pursuant to section 637(a).

or directors are members of minority groups. While corporate constitutional rights are not necessarily coextensive with the constitutional rights of individuals, *see First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 778 n.14, 98 S.Ct. 1407, 1416, 55 L.Ed.2d 707 (1978), it is indisputable that the Fifth Amendment shields corporate as well as individual property against federal action in violation of the Due Process clause. *See, e. g., Smyth v. Ames,* 169 U.S. 466, 522, 18 S.Ct. 418, 424, 42 L.Ed. 819 (1898). Like the plaintiff in *Davis v. Passman, supra,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846, DJM is a "person" protected by the Fifth Amendment who claims that its "rights under the Amendment have been violated, and that [it] has no effective means other than the judiciary to vindicate these rights." *Id.* at 243, 99 S.Ct. at 2276 (footnote omitted). Under these circumstances, *Davis* teaches that DJM has stated a valid cause of action for government discrimination in violation of the Fifth Amendment.

■ Once DJM's cause of action is admitted, we must also conclude, following *Davis,* that DJM may seek damages to redress its injuries. *See id.* at 248, 99 S.Ct. at 2278. No rationale would justify withholding damages relief from corporations which are otherwise entitled to sue while extending such relief to individuals. We therefore find that DJM may assert its Fifth Amendment damages claims.

### B

We next examine the government's contention that the SBA Administrator's decision to cancel the DJM loan authorization was an action "committed to agency discretion by law" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and thus is unreviewable. We have considered the range of agency actions which section 701(a)(2) insulates from judicial review on several recent occasions. We have stated:

> Judicial reviewability of administrative action is the rule and nonreviewability a narrow exception, the existence of which must be clearly demonstrated. *Arizona Power Pooling Ass'n v. Morton,* 9 Cir., 1975, 527 F.2d 721, 727, *cert. denied,* 1976, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761. The Supreme Court has stated that review is precluded only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe,* 1971, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136. *See also, Ness Investment Corp. v. United States Department of Agriculture, Forest Service,* 9 Cir., 1975, 512 F.2d 706, 713. If, however, no law fetters the exercise of administrative discretion, the courts have no standard against which to measure the lawfulness of agency action. In such cases no issues susceptible of judicial resolution are presented and the courts are accordingly without jurisdiction. *Arizona Power Authority v. Morton,* 9 Cir., 1977, 549 F.2d 1231, 1239, *cert. denied,* 1977, 434 U.S. 835, 98 S.Ct. 124, 54 L.Ed.2d 97.

*City of Santa Clara v. Andrus,* 572 F.2d 660, 666 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978). *See also Keating v. FAA,* 610 F.2d 611 (9th Cir. 1979). "In this respect, the courts will review an agency action when the alleged abuse of discretion is the violation of 'constitutional, statutory, regulatory or other legal mandates or restrictions.'" *Standard Oil Co. of California v. FTC,* 596 F.2d 1381, 1386 (9th Cir. 1979), *quoting Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d 706, 715 (9th Cir. 1975). To determine whether the parties have raised claims for which there is law to apply, we look to the allegations in the complaint. *Standard Oil Co. of California v. FTC, supra,* 596 F.2d at 1385–86; *Strickland v. Morton,* 519 F.2d 467, 471 (9th Cir. 1975).

■ DJM alleges that the SBA Administrator abused his discretion by discriminating against DJM in violation of the U.S. Constitution. The above-cited cases clearly indicate that the Constitution is a sufficient law to apply. The SBA Administrator's

action is therefore reviewable. Because neither of the district court's two reasons for dismissing DJM's causes of action was correct, we reverse the dismissal as to DJM.

III

We next turn to Marshall's claims. Marshall joins DJM in seeking damages for breach of contract and denial of civil rights, and brings an additional tort claim for personal injuries—physical pain from an ulcer, and emotional distress—suffered as a result of the SBA Administrator's actions.

We need not reach the question whether Marshall is entitled to relief on the claims he asserts jointly with DJM, since Marshall alleges no separate, individual injuries flowing from the alleged breach of contract which are different from the contract damages of DJM. We must consider, though, whether Marshall's personal tort claim was properly dismissed, since it alleges personal damages not suffered by DJM.

■ As indicated earlier, Marshall bases his tort claim for damages directly on the due process clause of the Fifth Amendment. *Davis v. Passman* makes it clear that Marshall's allegations—that the SBA Administrator discriminated against him and his company on the basis of race, and thus caused Marshall to suffer personal injuries—set forth a judicially-cognizable constitutional cause of action, redressable in damages. *See* Part II–A *supra.*

Our final question is whether Marshall's claim, which was brought three and one-half years after the Administrator's denial of the loan authorization, was time-barred by the applicable statute of limitations.[3]

The district court dismissed Marshall's individual tort claim because it was filed after the expiration of the two-year statute of limitations established in the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2401(b). But Marshall did not bring his action under the FTCA, nor did he name the United States as a party defendant. Marshall sued the SBA Administrator, in the Administrator's individual capacity, for violating Marshall's constitutional rights. Marshall predicated jurisdiction not on 28 U.S.C. § 1346, which permits FTCA suits against the United States, but on 28 U.S.C. § 1331(a), the general federal-question jurisdiction statute which, by Supreme Court holding, permits direct constitutional causes of action against federal officials. The statute of limitations provided in the FTCA is therefore inapplicable to Marshall's claim. *See Regan v. Sullivan*, 557 F.2d 300, 303–04 (2d Cir. 1977).

■ Our research has not disclosed, and the parties have not cited to us, any other federal statute which might provide a statute of limitations for direct constitutional causes of action. "When Congress fails to create a federal statute of limitations for federal causes of action, courts generally apply the statute of limitations of the most analogous cause of action under the law of the state in which the federal cause of action arises." *De Malherbe v. International Union of Elevator Constructors*, 449 F.Supp. 1335, 1339 (N.D.Cal.1978).[4] *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) (§ 1981 actions); *Beard*

---

**3.** Although neither the parties nor the district court raised the statute of limitations issue in relation to the claims of DJM, our discussion of this issue with respect to Marshall's personal injury claim clearly applies as well to DJM's claims.

**4.** When the need for interstate uniformity in the limitations period for a federally-created cause of action is "particularly great or when the nature of the federal right demands a particular sort of statute of limitations," courts may create a special federal statute of limitations, as a matter of federal common law. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 104, 92

S.Ct. 349, 354, 30 L.Ed.2d 296 (1971). Neither of these two conditions for utilizing federal common law is present here. Interstate uniformity has long been moribund in section 1983 actions, *see, e. g., Beard v. Robinson, supra*, 563 F.2d at 337 n.7; we do not think the need for uniformity presented by direct constitutional causes of action is significantly greater. Nor do constitutional causes of action, whether against state officials (§ 1983 actions) or federal officials (direct constitutional actions), have peculiarities which cannot be accommodated by typical state limitations periods.

*v. Robinson*, 563 F.2d 331, 334 (7th Cir. 1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978) (*Bivens* actions); *Regan v. Sullivan, supra,* 557 F.2d at 303 (*Bivens* actions); *Smith v. Cremins,* 308 F.2d 187, 189 & n.9 (9th Cir. 1962) (§ 1983 actions). The loan authorization that Marshall claims was cancelled for racially discriminatory reasons was executed in California, by the Los Angeles branch of the SBA acting for the SBA Administrator. Marshall's business (DJM) is in California. Marshall suffered his alleged injuries in California. There is nothing in the record before us to indicate that any events material to Marshall's cause of action arose elsewhere than California. Thus, we must apply one of California's statutes of limitations.

In an exhaustive opinion, the District Court for the Northern District of California recently considered which of California's several statutes of limitations should be applied to a direct constitutional cause of action, arising in California, and brought against an individual federal defendant. *De Malherbe v. International Union of Elevator Constructors, supra,* 449 F.Supp. 1335. Although we reach a result different from that reached in *De Malherbe,* we adopt Judge Renfrew's excellent analysis, in Part II of the *De Malherbe* opinion, of the general principles which govern the choice of an applicable statute of limitations for such actions. *Id.* at 1339–43. We also adopt the analysis in Part III–A, which explains why California Code of Civil Procedure (CCP) § 340(3), which provides that "[a]n action . . . for injury to . . . one caused by the wrongful act . . . of another" must be brought within one year, is inapplicable to a constitutional cause of action. *Id.* at 1343–45.

Once CCP § 340(3) is eliminated from consideration, there remain two California statutes of limitations which might be considered appropriate. CCP § 338(1) requires that "[a]n action upon a liability created by statute, other than a penalty or forfeiture," must be brought within three years after the cause of action accrued. CCP § 343, referring to the Code of Civil Procedure

chapter setting forth various statutes of limitations, states that "[a]n action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." Because Marshall brought his claim three and one-half years after the SBA Administrator cancelled the loan authorization, the choice between the three-year period specified in section 338(1) and the four-year period of section 343 is critical.

The court in *De Malherbe* selected CCP § 338(1) as the applicable statute of limitations for two reasons. First, the three-year limitations period in section 338(1) has long governed suits against state officials brought pursuant to section 1983. *See, e. g., Smith v. Cremins, supra,* 308 F.2d 187. The court in *De Malherbe* sought to create a uniform limitations period for both section 1983 actions against state officials and direct constitutional causes of action against federal officials. 449 F.Supp. at 1351. Second, the court viewed the direct constitutional action was analogous to "[a]n action upon a liability created by statute," Cal.Code Civ.Pro. § 338(1) (West Supp. 1979). 449 F.Supp. at 1350. Although the court in *De Malherbe* indicated that CCP § 343 was a possibility, it neither analyzed whether it should apply nor explained its reasons for rejecting it. *Id.* at 1343.

While we acknowledge the desirability of having uniform limitations periods for both section 1983 and direct constitutional actions, that reason alone is insufficient for us to conclude that a cause of action implied directly from the Fifth Amendment should be treated identically to one created by statute. Put simply, the Constitution is not a statute, and causes of action implied from the Constitution are not statutorily-based. We thus agree with the conclusion reached in *Beard v. Robinson, supra,* 563 F.2d at 338, in which the Court of Appeals for the Seventh Circuit held that it would be inappropriate in a direct constitutional action to select an Illinois limitations statute which covered "all civil actions not otherwise provided for" on the basis

that Illinois courts had interpreted this limitations period to govern causes of action arising from statutes. The court said, "[direct constitutional causes of action] are not creatures of statute." 563 F.2d at 338.

■ Although the court in *Beard* refused to reason that a direct constitutional cause of action is analogous to a cause of action arising from a statute, it nonetheless applied the Illinois five-year "catch-all" statute, which is almost identical to CCP § 343, for another reason: no other Illinois statute of limitations could be appropriately applied. *Id.* California, however, has provided different limitations periods for actions founded upon statute (CCP § 338(1)) and for "actions not hereinbefore provided for" (CCP § 343). Thus, California has an appropriate statute of limitations similar to the statute selected in *Beard*, which covers direct constitutional causes of action but not actions founded on statute. It is this statute, CCP § 343, which we apply.

In choosing to apply the four-year limitations period embodied in CCP § 343 instead of the shorter three-year period of CCP § 338(1), we follow the principle "that if a substantial question exists about which of two conflicting statutes of limitations to apply, the court should apply the longer as a matter of policy." *De Malherbe v. International Union of Elevator Constructors, supra*, 449 F.Supp. at 1341; *Guam Scottish Rite Bodies v. Flores*, 486 F.2d 748, 750 (9th Cir. 1973) (per curiam). Although we reluctantly sacrifice uniformity of the limitations periods for direct constitutional causes of action and for section 1983 actions, that result is unavoidable in light of California's statute of limitations scheme.

Because Marshall brought his action within the four years permitted by CCP § 343, the district court should not have dismissed his claim as out-of-time.[5]

REVERSED AND REMANDED.

---

**5.** Our determination that the district court erred in granting judgment on the pleadings implies no opinion on the merits of DJM's and Marshall's claims. In particular, we have not considered whether the SBA Administrator, considering his apparent lack of personal involvement in the decision to cancel the plaintiff's loan, is an appropriate defendant. We have also not considered whether the defendant may have a defense of immunity. *Cf. Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). These issues raise questions of law and fact that cannot be answered based upon the record before us.