Matthew LOCKARY; Phyllis Gilbert;
Charles Gilbert; James Macey;
Anton Holter, Plaintiffs,

v.

Paul KAYFETZ; Victor Amoroso; Mary Lowry; Diana Lopez Farnsworth; Edward C. Riley; Frederick B. McClellan; Peter Warshall; David L. Van Dusen; Doris Elaine LeMieux; Jack Bowen McClellan; J. Michael Groshong; William Niman; Judith Weston, as individuals; Bolinas Community Public Utility District, an incorporated public utility district; Bolinas Planning Council, a nonprofit corporation; John Goodchild; Gregory C. Hewlett; Steve Matson; Patricia L. Smith; Ray Moritz; Robert J. Scarola; Diane Middleton McQuaid; Frederick G. Styles, as individuals; and the Marin County Planning Department, Defendants.

No. C-82-6191 SW.

United States District Court,
N.D. California.

Jan. 20, 1984.

Ronald A. Zumbrun, Harold J. Hughes, Darlene E. Ruiz, Pacific Legal Foundation, Sacramento, Cal., for plaintiffs.

Gary L. Ginder, Walnut Creek, Cal., Charles L. Belkin, Johnson, Kealey, Ginder & Miller, Berkeley, Cal., for Orville Schell, William Niman.

William H. Gavin III, Peter G. Samuelson, Gassett, Perry & Frank, San Jose, Cal., for Edward C. Riley.

Larry D. Langley, Herrick, Hays, Shaffer & Langley, Palo Alto, Cal., for Judith Weston.

Matthew N. White, Peavey & White, San Francisco, Cal., for Marguerite Harris.

Mary Lowry, in pro. per.

Peter Warshall, in pro. per.

Douglas J. Maloney, Marin County Counsel, San Rafael, Cal., for Bolinas Community Public Utility Dist.

Richard C. Gould, R.A. Helmenstine; Lynch & Loofbourrow, San Francisco, Cal., for County of Marin.

R.S. Cathcart, Ross R. Ryder, Michael F. Hardiman, Bledsoe, Cathcart, Boyd, Eliot & Curfman, San Francisco, Cal., for J. Michael Groshong.

Brian E. Gray, Alison M. Nichols, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for Paul Kayfetz.

David J. Becht, Bruce Nye, Popelka, Allard, McCowan & Jones, San Francisco, Cal., for Doris Elaine LeMieux, Jack Bowen McClellan, Diana Lopez Farnsworth.

Richard E.V. Harris, George A. Yuhas, Orrick, Herrington & Sutcliffe, A Professional Corporation, San Francisco, Cal., for Victor Amoroso.

## ORDER AND MEMORANDUM OF LAW GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

SPENCER WILLIAMS, District Judge.

Plaintiffs, owners of undeveloped land in the unincorporated coastal community of Bolinas, bring suit under several theories challenging a 12-year-old moratorium on new water hook-ups pursuant to a declared "water emergency." They also challenge related acts which are allegedly part of a broad conspiracy to deprive them of their constitutional rights and monopolize the tourism and water development markets in Bolinas.

Defendants are the Bolinas Community Public Utility District (BCPUD), which enacted and has maintained the moratorium; the Bolinas Planning Council (BPC), a nonprofit corporation which has a disputed role in the land use planning process in Bolinas; the County of Marin; and 21 individuals who are either past or present directors of BCPUD or BPC.

Plaintiffs' primary claims are that: (1) the moratorium has been fraudulently or arbitrarily and capriciously enacted and maintained as a pretext for a no-growth policy in Bolinas; (2) the moratorium and implementing regulations have been discriminatorily enforced to enable current residents to further develop their property, while excluding outsiders; and (3) certain defendants have acted in their individual capacities to prevent plaintiffs from developing their land. In addition to their taking and inverse condemnation theories, plaintiffs sue under 42 U.S.C. §§ 1981 *et seq.*, the First, Fifth, and Fourteenth Amendments, and the Sherman Act, 15 U.S.C. §§ 1 and 2.

Defendants bring motions to dismiss plaintiffs' first amended complaint and strike time-barred claims. After careful consideration of the briefs and arguments presented, **IT IS HEREBY ORDERED** that defendants BPC and directors Goodchild, Hewlett, Matson, Smith, Moritz, Scarola, McQuail, and Styles are **DISMISSED. IT IS FURTHER ORDERED** that plaintiffs' anti-trust claims are **DISMISSED** with prejudice. Plaintiffs retain viable constitutional and civil rights claims against BCPUD, its directors, and the County based on alleged illegalities surrounding the moratorium on new water hook-ups.

## BACKGROUND

On June 22, 1983, this Court heard defendants' motions to dismiss and strike time barred claims with respect to the original complaint. The Court dismissed the complaint with leave to amend and discussed the deficiencies in the complaint in an Order and Memorandum filed July 5th, 1983. The Court instructed plaintiffs to file a more definite statement specifying the underlying factual details "which indicate a nexus between each defendant and the alleged wrongs suffered." Order and Memorandum at 4:23–24. Plaintiffs' counsel was ordered to set forth "with sufficient specificity facts which indicate how plaintiffs' rights were violated, who was responsible for the pertinent acts, and when these acts occurred." Order and Memorandum at 3:2–6.

In particular, the Court was concerned that some defendants have been unjustifiably dragged into this suit with conclusory allegations, including conspiracy. Also, the Court noted that plaintiffs' only *specific* allegations centered on the enactment and continuance of the water moratorium. The moratorium was initially declared in 1971; the most recent resolution perpetuating the ban on new hook ups was passed in 1977.[1]

---

1. Plaintiffs fail to allege the dates of these resolutions, but defendants indicate in their papers that the last one was passed in 1977.

Because plaintiffs' claims based on these acts appear facially barred by the applicable statutes of limitations [2], the court told plaintiffs to set forth with particularity facts bearing on timeliness in their amended complaint.

Although plaintiffs have doubled the number of claims for relief and added 21 pages to their complaint, they have added virtually no specificity. At best, they attempt to distinguish the allegations against the entities from those against the individuals in some instances by stating them in separate claims. However, plaintiffs have failed to satisfy the Court's initial concerns.

Although plaintiffs' lack of specificity does not require dismissal of their entire amended complaint, it is fatal to some of their claims against some defendants, as discussed more fully below.

## STATUTE OF LIMITATIONS

▆▆▆ Defendants assert that plaintiffs' claims are barred by the applicable statutes of limitations. The limitations period for constitutional claims is four years, and for civil rights claims three years. *Marshall v. Kleppe*, 637 F.2d 1217, 1224 (9th Cir.1980); *Bradshaw v. Zoological Society of San Diego*, 569 F.2d 1066, 1068 (9th Cir.1978). Anti-trust claims are barred four years after a cause of action accrues. 15 U.S.C. § 15b; *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). As the following discussion indicates, those claims which arise directly from the implementation and enforcement of the water moratorium are not barred because they fall within the continuing wrong exception to the statute of limitations. However, with regard to the activities vaguely alleged in the amended complaint which relate to matters other than the implementation and enforcement of the moratorium, such as general planning, those allegations are time-barred.

Defendants assert that, to the extent that plaintiffs base their claims on the moratorium, their claims are barred.

Plaintiffs seek to avoid the putative bar by alleging that defendants fraudulently concealed their illegal motives or, alternatively, that defendants' conduct constituted a continuing wrong. They allege generally that "the acts and omissions of defendants ... were in most instances covert acts committed in furtherance of defendants' plan ... to deny plaintiffs their constitutionally protected rights." Amended Complaint ¶ 36.

In the July 5th Order, this Court stated that

[I]t is expected that the amended complaint will state with specificity the dates these acts occurred and the dates plaintiffs were first injured or first became aware of their injuries... It is ... essential that plaintiffs amend their complaint to state with specificity facts and dates that have a bearing on the question of timeliness.

Order and Memorandum 4:25–28.

Plaintiffs have responded by alleging only that they "could not have known" prior to dates which are one day within the relevant statutory periods "that their rights and property had been denied to them." *See* Amended Complaint ¶¶ 36, 43, 39, 75, 102.

▆▆▆ Plaintiffs' fraudulent concealment theory must fail for lack of specificity. They may not "rely upon conclusory statements to avoid the bar of limitations," but "must plead with particularity the circumstances surrounding the concealment and state facts showing [their] due diligence in trying to uncover the facts." *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir.1978).

▆▆▆ However, the continuing wrong exception does provide a basis for maintaining plaintiffs' claims with respect to the water moratorium itself. That exception provides that "where a continuous chain of events or course of conduct is involved, the cause of action accrues at the time of the

---

**2.** As discussed more fully below, plaintiffs seek to avoid the bar by alleging the "fraudulent

concealment," or alternatively, "continuing wrong" exceptions to the statutes of limitations.

final act in that series of events or course of conduct." *Barbaccia v. County of Santa Clara,* 451 F.Supp. 260, 266 (N.D.Cal. 1978), *citing U.S. v. Dickenson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). "The purpose of the rule is not only to avoid multiple actions but to allow aggrieved property owners to assess the full extent of their losses before filing suit." *Id.*

Reading the complaint in the light most favorable to plaintiffs, the continuation of the moratorium can reasonably be said to constitute a continuing wrong. At the heart of the complaint is the contention that, although a temporary water moratorium is one thing, an "emergency" lasting twelve years is a taking. They allege that it is the unlawful duration of the moratorium which constitutes the continuing wrong.

Although there is no Ninth Circuit case on point, other circuits have addressed the continuing wrong exception in relevant land use contexts. In *Gordon v. City of Warren,* 579 F.2d 386 (6th Cir.1978), cited by plaintiffs, the court held that the statute of limitations in a civil rights suit based on an alleged taking by a city did not begin to run until the offending restraint on the plaintiff's land had been removed. The Court held that the continuing wrong was the continued enforcement of an ordinance which a state court of appeals had invalidated pending appeal to the state supreme court. The ordinance allowed the city to enforce a stop order on construction of partially completed buildings on the plaintiff's property.[3] The Sixth Circuit stated that the wrong was the entire taking, and not merely the original application of the regulation to plaintiff's property. *Id.* at 391.

Defendants cite *Ocean Acres v. Dare County Board of Health,* 707 F.2d 103 (4th

Cir.1983), where the court rejected the continuing wrong exception in a civil rights challenge to a moratorium on septic tank installations. Although at first blush the case seems more relevant than *Gordon,* it is clearly more distinguishable. The plaintiffs in *Ocean Acres* did not initially challenge the moratorium, but went on with their development by modifying their plans to incorporate a more costly centralized sewer system. They brought suit seven years after the moratorium had been enacted and a year after it had been removed, seeking lost profits due to their added expense. In rejecting their continuing wrong theory, the court noted that any damage they had suffered was caused by the original enactment of the moratorium. The plaintiffs could assert no damage caused by the duration of the ban into a period within the statute of limitations. The court briefly distinguished *Gordon* as a case where "an act by a government entity actually deprive[d] an individual of use of his property ..." *Id.* at 106.

Although the effect of the regulation in *Gordon* was arguably more severe than in present case, plaintiffs here also claim that the moratorium deprives them of all reasonable use of their property. The plaintiffs in *Ocean Acres* could make no such claim. Regardless of the ultimate merit of plaintiffs' claim, the moratorium itself constitutes a continuing wrong under the logic of *Gordon.* Therefore, the statutes of limitation will not bar claims arising out of the moratorium.

Plaintiffs have also included vague allegations concerning other planning activities in which defendants may have engaged. These allegations must be dismissed as they are barred by the statutes of limitations and do not fall within the continuing wrong exception.

---

**3.** The challenged ordinance prohibited construction within 200 feet of any proposed right of way. Because of a mutual mistake by plaintiff and the City, plaintiff began construction of four buildings which would overlap the prohibited zone. Upon discovery of the problem, the City ordered plaintiff to stop construction and dismantle the buildings. After the plaintiff re-

fused, a state trial court issued an injunction directing that two of the buildings be dismantled. Plaintiff appealed and the state court of appeals held that the ordinance was void as unconstitutional. The City continued to enforce the ordinance pending appeal to the state supreme court, even though no order staying the decision of the court of appeals was issued.

## LIABILITY OF BCPUD DIRECTORS

Plaintiffs sue 13 past or present directors of the BCPUD for "knowing acts, omissions, and conspiracies occurring while serving out terms of office as members of the Board of Directors of BCPUD and as private citizens." Amended Complaint ¶ 21. The Amended Complaint alleges generally that these defendants "acted in a non-legislative capacity" and "outside the scope of their authority" to deprive plaintiffs of their constitutional rights." Amended Complaint ¶¶ 22 and 24. These defendants seek to have the claims dismissed, contending that they are immune from liability because the claims concern legislative acts. As discussed below, the question whether these defendants were acting in a legislative or an executive capacity in all activities which the complaint rightly encompasses is a question which must be resolved at summary judgment or trial, rather than in the instant motion.

With the exception of an allegation that some defendants bought up property and attached deed restrictions preventing the development of water resources, [Amended Complaint ¶ 91(d)], the only specific activities allegedly committed by the directors were: (1) the enactment of resolutions implementing and extending the water moratorium [¶¶ 72–75]; (2) the discriminatory enforcement of the moratorium and related regulations [¶¶ 108–117]; and (3) the abuse of their office "to assist and cooperate in frustrating applications and efforts of development." See, e.g. ¶¶ 39(e) and 91.

■ In the July 5th Order, this Court stated that it "considers the doctrine of legislative immunity fully applicable to the BCPUD's decisions concerning the enactment and continuance of the emergency and moratorium." Order 5:11–15. Under that doctrine, individual local legislators are absolutely immune for acts committed in their legislative capacity. *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir.1982); *Gorman Towers v. Bugoslavsky*, 626 F.2d 607, 612–614 (8th Cir.1980).

■ Legislative activity involves the "promulgation of legislation of a general or prospective nature," rather than "discretionary determinations with respect to a single parcel of land." *Barbaccia v. County of Santa Clara*, 451 F.Supp. 260, 267 (N.D.Cal.1978). The state courts have held that the declaration of a water shortage emergency and enactment of a moratorium on new water service hookups is a legislative act. *Swanson v. Marin Municipal Water District*, 56 Cal.App.3d 512, 519 (1976). Since the resolutions at issue here were enacted by elected officials and have a general effect on the community, we find the reasoning of *Swanson* and its kin persuasive and their holdings applicable.

■ The policy behind legislative immunity indicates that it should apply fully to the acts of the directors concerning the enactment and continuance of the moratorium. In *Kuzinich v. County of Santa Clara, supra*, the court noted that "where legislators are involved in balancing social needs against constitutional rights," the need for a rule of absolute immunity is manifest. *Kuzinich, supra*, 689 F.2d at 1350. In *Gorman Towers v. Bugoslavsky, supra*, (finding city officials absolutely immune with respect to their enactment of an allegedly unconstitutional zoning amendment), the court stated that:

> Because municipal legislators are closer to their constituents than either their state or federal counterparts, they are, perhaps, the most vulnerable to and least able to defend lawsuits caused by the passage of legislation. Particularly in the area of land use, where decisions may have an immediate quantifiable impact on both the value and development of property, local legislators should be free to act solely for the public good without the spectre of personal liability.

*Gorman Towers, supra*, 626 F.2d at 612, quoting *Ligon v. Maryland*, 448 F.Supp. 935, 947 (D.Md.1977).

■ The court further noted that the existence of other "effective checks on unconstitutional conduct" is an important underpinning for the doctrine. Allegedly un-

constitutional land use legislation may be attacked on direct judicial review in either state or federal court. *Id.* at 613. More importantly, municipal bodies themselves are liable in damages for unconstitutional conduct under § 1983. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). As the *Gorman* court stated:

> The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights.

*Gorman Towers, supra,* 626 F.2d at 613 *quoting Owen v. City of Independence, supra,* 445 U.S. at 651–52. The liability of municipal bodies also insures that injured plaintiffs will have a source of compensation, notwithstanding the immunity of officials.

In this case, the potential liability of BCPUD for any legislative abuse depriving plaintiffs of their constitutional rights abrogates the need to hold the individual directors liable for damages based on their legislative acts. Therefore, to the extent that plaintiffs' allegations concern legislative acts on the part of these defendants, they are subject to dismissal.

An examination of those allegations, however, shows that plaintiffs may have included conduct which is not, in fact, wholly legislative. Plaintiffs' allegations that the moratorium and related regulations have been unequally and unfairly enforced are set forth in their fourth and sixth claims for relief. Plaintiffs charge that some directors abused their authority in order "to prevent plaintiffs from obtaining any beneficial use of the utility's services."

■ Enforcement and implementation of regulations or legislation are executive rather than legislative activities. These are subject only to a qualified immunity. *Jacobson v. Tahoe Regional Planning Agency,* 566 F.2d 1353, 1365 (9th Cir.1977), *rev'd in part and aff'd in part sub nom,*

*Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

■ Although "absolute immunity defeats a damage suit at the pleading stage [,] qualified immunity is available only if the evidence shows that those actions were taken in good faith, i.e., with a reasonable belief that they were lawful." *Gorman Towers, supra,* 626 F.2d at 611, *citing, Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989, n. 13 (1976). Where executive functions are concerned, the earliest point at which the court can determine whether challenged actions were taken in good faith, and therefore shielded by immunity, is at the summary judgment stage of litigation.

■ Dismissal of the BCPUD directors is inappropriate at this time. In addition to the question of whether executive actions were taken in good faith, an issue also exists as to precisely which actions were, in fact, executive. Also, plaintiffs should have an opportunity to pursue their allegation that some directors acted in their individual capacities by "improperly" purchasing and encumbering property.

The parties should be aware that the Supreme Court recently refined the standard for determining whether challenged conduct is protected by qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court indicated that courts should only conduct an *objective* inquiry into whether the conduct "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Previously, the test also required a subjective inquiry into whether defendants had acted with malicious intent to deny constitutional rights. The change is designed to minimize the disruptive effect on government of spurious claims by facilitating the disposition of insubstantial claims on summary judgment, rather than requiring a trial on the difficult factual issue of subjective intent. *Id.*

## THE BOLINAS PLANNING COUNCIL AND ITS DIRECTORS

Plaintiffs name BPC and its individual directors in several claims. BPC is a "California non-profit, tax-exempt corporation claiming to have certain governmental powers and whose directors are purportedly elected to govern the council." Amended Complaint ¶ 30.

Plaintiffs allege that BPC acted illegally by: (1) formulating local general plans, which were submitted to and adopted by the Marin County Planning Council, "premised upon the maintanance of a sham 'emergency'" and BCPUD's discriminatory enforcement practices [Amended Complaint ¶ 61]; (2) failing to give adequate notice of meetings where these plans were promulgated [Amended Complaint ¶ 64]; and (3) conspiring with BCPUD and other defendants to deprive plaintiffs of their constitutional and civil rights [Amended Complaint ¶¶ 148–154].

▮▮ Plaintiffs do not dispute that BPC and its directors are private citizens whose activity is designed to influence government decisions. Although petitioning and similar activity is not subject to an absolute immunity, it is *prima facie* protected by the First Amendment. As the court stated in *Franchise Realty Interstate Corp. v. San Francisco Joint Executive Board*, 542 F.2d 1076, 1082–1083 (9th Cir.1976):

> [W]here a plaintiff seeks damages or injunctive relief, or both, for conduct which is *prima facie* protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.

*Id.* at 1082–83, quoted in Order and Memorandum at 4:18–21.

Despite the Court's Order, plaintiffs continue to use extremely general pleading in an attempt to cast a broad net of liability over anyone connected with land use planning in Bolinas. They challenge "defendants' land use plans including but not limited to the local coastal plan, the county general plan, and implementing ordinances so far as they address the planning element for Bolinas." Amended Complaint ¶ 130. Apparently, "defendants" here refers to both BPC and Marin County. Plaintiffs also challenge BPC's participation in the permitting process in Bolinas, although they do not allege that any specific permit was denied.

▮▮ As the Court noted in the July 5th Order, however, "[d]espite the breadth of these allegations, the only clearly specified action (which has injured plaintiffs) involves the enactment by BCPUD of the water emergency and moratorium." Order and Memorandum 3:25–28. Despite the court's admonitions that plaintiffs identify with greater precision the acts complained of, the amended complaint fails to even specify *which* regulations or aspects of the general plans have injured plaintiffs, or how they were injured by any participation by BPC in the permitting process. The gravamen of their amended complaint continues to be that they cannot develop their land because of the continuing moratorium on new water hook-ups. All other allegations are peripheral to this claim. It is settled that conclusory allegations, unsupported by any underlying factual details, are insufficient to state civil rights violations and constitutional claims. *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).

▮▮ Plaintiffs' broad allegations that some of these defendants conspired with the entities and with each other to deprive plaintiffs of their civil rights, set forth in their eleventh claim for relief, are also insufficient to state a claim against them. Allegations of conspiracies must be supported by material facts, not merely conclusory statements. *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). This is particulary true where First Amendment rights are involved.

Therefore, because the allegations contained in the amended complaint against

BPC and its directors remain deficient, they are dismissed.[4]

## THE COUNTY OF MARIN

 The First Amendment concerns discussed above do not apply to plaintiffs' broad and general allegations with respect to the planning activity of the County. Moreover, if the County has, in fact, unlawfully delegated its planning authority to private citizens, and plaintiffs can demonstrate an injury as a result, the County would be the proper party to hold liable. Therefore, the County's motion to dismiss must be denied.

## ANTI-TRUST CLAIMS

Plaintiffs allege violations of the Sherman Act by all defendants. They claim that the moratorium and related activities were aimed at monopolizing the tourist and water development industries in Bolinas. *See Amended Complaint,* ¶¶ 155–209.

### A. CLAIMS AGAINST BCPUD

In the July 5th Order, the court stated that it "considers the ... *Parker* doctrine fully applicable to BCPUD's decisions concerning the enactment and continuance of the moratorium." Order and Memorandum 4:11–15. The *Parker* doctrine states that "state action or official action directed by a state" is not subject to liability under the Sherman Act. *Parker v. Brown,* 317 U.S. 341, 350, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). Defendant has not cited, nor have we found, cases finding an exception to the doctrine where abuse of statutorily granted powers is alleged.

 Where local defendants are concerned, the rule is that "municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy is immune" from anti-trust liability. *Community Communications Co. v. Boulder,* 455 U.S. 40, 51, 102 S.Ct. 835, 840, 70 L.Ed.2d 810 (1982). This test is satisfied if "the challenged activity was clearly within the legislative intent" behind the statutory grant of power by the state which authorizes the activity. *Id.* at 49–50 n. 12, 102 S.Ct. at 840 n. 12.

 The action by BCPUD in enacting a water moratorium is precisely the kind of conduct which the *Parker* doctrine is intended to protect. California has enacted a comprehensive statutory policy specifically addressed to "the governing board of a distributor of a public water supply," which grants authority to impose connection moratoria during declared water shortages. *See generally* California Water Code §§ 350–359. Section 356 specifically grants BCPUD "the right to deny applications for new or additional service connections" if it finds that such action is necessary to "conserve the water supply for the greatest public benefit." Cal. Water Code § 353. Additionally, BCPUD may declare a water shortage emergency "whenever it finds and determines that the ordinary demands and requirements of water consumers cannot be satisfied" without threatening high priority needs for water. Cal. Water Code § 350.

Plaintiffs cite *Community Communications Co. v. Boulder, supra,* in support of their claim that BCPUD's action here is not protected by the *Parker* doctrine. In that case, the Supreme Court held that an emergency moratorium on cable television hookups, enacted pursuant to a city's "home rule" authority, was not exempt from anti-trust liability. Plaintiffs claim that the water moratorium should be treated similarly.

Although both cases involve moratoriums, *Boulder* has no application to this case. The Court there expressly based its decision on the fact that the "home rule" statutory authorization by the state amounted to "mere neutrality," rather than "clearly articulated and affirmatively expressed state policy." *Id.* at 55, 102 S.Ct. at 843. The Court noted that the enactment of the moratorium was not an action " 'comprehended within the powers *grant-*

---

**4.** SEE the Anti-trust section of this Memorandum for a further discussion of the claims made against BPC.

ed,' since the term 'granted' necessarily implies an affirmative addressing of the subject by the state." *Id.;* emphasis in original. Here, the extensive statutory authorization for the moratorium in the Water Code constitutes the "affirmative addressing of the subject" which the Court found missing in *Boulder.*

Plaintiffs also assert that protected activity must be under "active state supervision" in order to be protected. Several cases involving *private* defendants have stated this requirement. *See, e.g., California Retail Liquor Dealers Ass'n v. Midcal Aluminum Co.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). However, the Supreme Court has never applied the state supervision requirement to a governmental defendant. In *Boulder,* the Court expressly reserved judgment on whether the requirement applied. *Boulder, supra,* 455 U.S. at 51–52 n. 14, 102 S.Ct. at 841 n. 14. A recent case, *Town of Hallie v. City of Eau Claire,* 700 F.2d 376 (7th Cir.1983), specifically held that the requirement does not apply when municipal activity is at issue: "Supervision is unnecessary because local governments operate pursuant to clearly articulated and affirmatively expressed restraints imposed by the state in its policies and delegation of authority." *Id.* at 384.[5]

In sum, all anti-trust claims against BCPUD must be dismissed.

### B. CLAIMS AGAINST COUNTY OF MARIN

■ As for the County of Marin, plaintiffs allege in conclusory terms that it has improperly used its zoning power in violation of the anti-trust laws. The zoning power is also affirmatively granted by the state pursuant to elaborate and well-articulated state policy, and therefore cannot form the basis for anti-trust liability. For example, Government Code section 65030.1 states that local "planning should proceed

within the framework of officially approved statewide goals and policies," and notes that other sections of the code implement these policies. Section 65040.5 requires "every (planning) agency to report regularly to the (State) Office of Planning and Research concerning its planning activities." Not surprisingly, plaintiffs cite no cases finding a public defendant liable under the anti-trust claims against the County of Marin must also be dismissed.

### C. CLAIMS AGAINST BPC, ITS DIRECTORS AND THE BCPUD DIRECTORS

■ BPC and its individual directors are shielded from anti-trust liability by the *Noerr-Pennington* doctrine. That doctrine also protects the BCPUD directors from anti-trust liability for any activity engaged in their individual capacity in the nature of political expression. (For example, plaintiffs state in ¶ 87, incorporated into plaintiffs' anti-trust claims by reference, that "defendants herein ran for elected office on a platform of opposition to growth and development in and around the district.") The *Noerr-Pennington* doctrine, distilled from two Supreme Court decisions, instructs that activity designed to influence government decision-making is not subject to anti-trust liability, even if inspired *entirely* by anti-competitive motive. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136–137, 139, 81 S.Ct. 523, 528–529, 530, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1964).

In *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board,* 542 F.2d 1076, 1086 (9th Cir.1976) *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977), the court held that *Noerr-Pennington* applied to activity by a union and an employers' group designed to

---

5. Even if the requirement did apply, it arguably would be satisfied in this case. Water Code § 357 requires a public distributor of water to secure the approval of the state Public Utilities Commission before promulgating "regulations and restrictions on delivery and consumption of water" which conflict with any established rights of consumers. Section 357 conceivably could furnish active state supervision if in fact such supervision were required.

keep a restaurant chain from opening outlets in their area. After scrutiny of allegations no less specific that those in plaintiffs' amended complaint, the court affirmed dismissal by the trial judge on a Rule 12(b)(6) motion. The court based its decision both on *Noerr-Pennington* and the fact that the plaintiffs had failed to allege *specific* conduct outside of the doctrine. *Id.* at 1082.

Plaintiffs here, as in *Franchise Realty,* attempt to invoke the sham exception to that doctrine. Under that exception, activity which is not genuinely intended to influence government activity, but is merely a pretext for suppressing competition, is not entitled to anti-trust immunity. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Clipper Exxpress v. Rocky Mountain Motor Tariff,* 690 F.2d 1240, 1252 (1982). Plaintiffs cite *Clipper Exxpress* for the proposition that "[w]hether something is a genuine effort to influence government action, or a mere sham, is a question of fact." *Clipper Exxpress,* 690 F.2d at 1253. However, plaintiffs fail to allege facts even remotely similar to any of the cases recognizing the exception, and fail to make out a *prima facie* case for invoking the exception. In *Clipper Exxpress,* the defendants *stipulated* for the purpose of the motion at issue that their intent in bringing baseless administrative actions "was not to induce favorable administrative action" from the I.C.C., but rather to "have an anti-competitive impact on plaintiff." *Clipper Exxpress,* 690 F.2d at 1254. In *California Motor Transport Co. v. Trucking Unlimited, supra,* the court held that allegations that defendant had instituted adjudicatory proceedings without probable cause and regardless of merit fell within the sham exception to *Noerr. California Motor Transport,* 404 U.S. at 512, 92 S.Ct. at 612.

It is clear from the amended complaint in this case, however, that the challenged conduct by the individual defendants was legitimately intended to influence government action. Plaintiffs' allegations that defendants were motivated by anti-competitive in-

tent does not bring them within the sham exception. As the court stated in *Clipper Exxpress,* "(g)enuine efforts to induce governmental action are shielded by *Noerr* even if their express purpose and sole purpose is to stifle competition." *Clipper Exxpress,* 690 F.2d at 1254.

Thus, plaintiffs' anti-trust claims must be dismissed in their entirety.

## SECTION 1983 AND CONSTITUTIONAL CLAIMS

Plaintiffs' amended complaint sufficiently alleges takings, equal protection, and substantive due process claims under the Fifth and Fourteenth amendments. Because the alleged constitutional infractions occurred under color of state law, plaintiffs also make out a claim under 42 U.S.C. § 1983 against BCPUD, its directors, and the County of Marin.

■ A taking occurs when a public entity directly and substantially interferes with property rights and thereby significantly impairs the value of the property. It is not necessary that the government actually appropriate the title or physically invade the property. *See Martino v. Santa Clara Valley Water District,* 703 F.2d 1141, 1147 (9th Cir.1983); *Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency,* 561 F.2d 1327, 1330 (9th Cir.1977). Although defendants point out that these cases involved unreasonable delay in the condemnation process, impending condemnation is not a prerequisite for a takings or inverse condemnation action. *See Jacobson v. Tahoe Regional Planning Agency,* 566 F.2d 1353, 1359 n. 9 (9th Cir.1977), *aff'd in part and rev'd in part, sub. nom., Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). Plaintiffs' allegations that the enactment and continuance of the moratorium has rendered their property substantially valueless makes out a *prima facie* taking claim.

■ Their allegations that the moratorium has been arbitrarily and capriciously enacted and prolonged, and discriminatorily

enforced, make out claims for denial of substantive due process and equal protection.

Defendants argue that a damage remedy is unavailable to plaintiffs in this case, and that dicta by the Supreme Court in *Lake Country Estates, supra,* does not require a contrary result. However, the Ninth Circuit clearly stated its view on the issue in *Martino v. Santa Clara Valley Water District, supra*:

> While 'the contours of municipal liability under § 1983 ... are currently in a state of evolving definition and uncertainty' [citations], an action for damages under section 1983 for overregulation of land was recognized by the U.S. Supreme Court in *Lake Country Estates.*

*Martino,* 703 F.2d at 1148.

Plaintiffs make some additional constitutional claims in their first and second claims for relief, entitled "Denial of First Amendment Rights." They allege that BCPUD, Marin County, and BPC precluded them from expressing themselves by giving inadequate notice of meetings which affected their property.

As noted above, because BPC is a private entity engaged in First Amendment activity and plaintiffs have failed to allege that any specific activity by it injured them, or in what manner, all claims against that entity and its directors are dismissed.

Plaintiffs' First Amendment claims against BCPUD and Marin County might more properly be characterized as denials of procedural due process. In any event, the court hesitates to dismiss these in the absence of a factual record. Nonetheless, one observation can be made. It appears from the briefs, and to a lesser extent from plaintiffs' vague amended complaint, that plaintiffs complain of failure to receive *individual* mailed notice of meetings at which legislative action such as the passage of resolutions took place. To the extent that the record on summary judgment or at trial reveals that the required statutory notice was provided for legislative activities, plaintiffs' claims in this area will fail.

Plaintiffs cite cases such as *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), involving due process requirements in adjudicatory proceedings. However, it is well-established that "where an agency action is not based on individual grounds, but is a matter of general policy" and is therefore legislative in nature, no traditional due process requirements attach. *Yassini v. Crosland,* 618 F.2d 1356, 1363 (9th Cir.1980).

## CONCLUSION

Plaintiffs state claims under the Fifth and Fourteenth Amendments, and 42 U.S.C. § 1983. Their allegations that the water moratorium is a fraudulent or arbitrary and capricious pretext for a no-growth policy, and has been discriminatorily enforced, state taking, substantive due process, and equal protection claims. Their allegation that they did not receive adequate notice of public proceedings affecting their property states a due process claim.

BCPUD is a proper defendant in this action because it has enacted, maintained, and enforced the moratorium. Although its individual directors are absolutely immune from liability concerning their legislative acts, they enjoy only qualified immunity with respect to any executive activity in which they engaged, such as enforcement. The precise scope of this immunity in the context of these facts remains an issue for summary judgment or trial.

The County of Marin also remains a defendant. Plaintiffs allege that the County improperly delegated its authority to a private entity and private individuals who influenced government policy in ways which violated plaintiffs' rights. They also allege, generally, that the County shares responsibility for illegal implementation of the moratorium through its land use plans and regulations.

The acts directly related to the enactment and enforcement of the moratorium constitute a continuing wrong and are therefore not barred by the relevant stat-

utes of limitations. However, to the extent that they occurred prior to the relevant period, the vaguely alleged acts in plaintiffs' amended complaint which do not concern directly the moratorium's enactment and enforcement are dismissed because they are time-barred.

Plaintiffs' claims against BPC and its individual directors are dismissed. Plaintiffs attack the activities of a private entity and private individuals designed to influence government policy-activity which is *prima facie* protected by the First Amendment. Despite this Court's admonitions that they do so, plaintiffs have failed to allege specific activity by these defendants which has caused them injury. They have therefore failed to meet the slightly higher standard of pleading which is invoked when litigation threatens to chill First Amendment rights. In dismissing these defendants, the court is cognizant of the fact that the County may be held liable for any injury caused by improper delegation of authority.

Plaintiffs' anti-trust claims are dismissed, with prejudice, as to all defendants. Plaintiffs attack state action which is immune from anti-trust liability under the *Parker* doctrine. They also attack political expression protected by the First Amendment under the *Noerr-Pennington* doctrine. However, plaintiffs state viable constitutional and civil rights claims against BCPUD, its directors, and the County.

THEREFORE, **IT IS ORDERED** that defendants' motion to dismiss is granted insofar as it concerns all claims against BPC and its directors. **IT IS ORDERED** that defendants' motion to dismiss is granted with respect to all anti-trust claims contained in the amended complaint. **IT IS ORDERED** that defendants' motion to dismiss is granted as to all claims which do not specifically concern the enactment and enforcement of the moratorium. The balance of defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**