NEW PORT LARGO, INC., etc., et al., Plaintiffs,

v.

MONROE COUNTY, etc., et al., Defendants.

No. 87–10043–Civ.

United States District Court, S.D. Florida.

Nov. 21, 1988.

**1508**

Ferraro, Seward & Stanton, P.A., Miami, Fla. by Michael R. Seward, Coan, Couture, Lyons & Moorehead, Washington, D.C. by Andrew P. Murphy, Joseph B. Allen, III, Key West, Fla. by Joseph B. Allen, III, Maurice Jay Kutner, Miami, Fla., for plaintiffs.

Morgan & Hendrick, P.A., Key West, Fla. by James T. Hendrick, Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey by Franklin G. Burt, Floyd Pearson Richman Greer Weil, Zack & Brumbaugh, P.A., Miami, Fla. by Robert L. Floyd, Alan G. Greer, Robert J. Fiore, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

JAMES LAWRENCE KING, Chief Judge.

After the plaintiffs voluntarily dismissed several original defendants, the remaining defendants Monroe County, the County Commissioners (Donald Schloesser, Alison Fahrer, Curt Blair, George Dolezal), the members of the Monroe County Planning and Zoning Board (Nat Funke, William Keefer, Robert Curry and David Richards, Jr.) (hereinafter referred to as "Planners") and Joseph Sharit moved to dismiss.[1] Collectively, these defendants raise many of the same arguments for dismissal, as well as a few that depend solely upon their individual status. The court has carefully considered the oral argument of counsel and the record in this case.

The complaint alleges a lengthy and intriguing rezoning procedure of the property here involved. The plaintiffs' factual scenario begins in October of 1967 when an individual named Sheley (acting as Trustee for prospective purchasers) applied to the Trustees of the Internal Improvement Fund (TIIF) to purchase submerged lands that eventually became the property in question. In August of 1968, the TIIF sold the subject property to Sheley. The plaintiffs contend that Sheley orally agreed to permit Monroe County to use the subject property as an airstrip.

In 1970 Sheley's trusteeship expired and an individual by the name of Bassett became the Trustee. Sheley, however, continued to manage the property under the power of attorney executed by Bassett.

The plaintiffs contend that the first zoning of this property occurred in December, 1972, when the county platted the subject property into residential lots zoned for RU–2 duplexes.

The actual named plaintiffs begin to appear in 1979. An individual named Lance and the plaintiff Netter formed New Port Largo, Inc. for the purpose of purchasing the subject property for development into residential duplexes. Lance subsequently sold his interests to the plaintiff Marr. In September, 1979, New Port Largo purchased the property from Bassett.

The plaintiffs allege that at this point in time a massive conspiracy commenced involving homeowners in the adjacent community of Port Largo. The purpose of the alleged conspiracy, as set forth in the complaint, was to acquire plaintiffs' land without compensation and convert it to the benefit of the adjacent homeowners and the county.

At this time, the plaintiffs contend, the county decided to rezone the property to achieve its wrongful goals. They state that on November 27, 1979, the county filed an application to rezone the subject property from residential RU–2 to PA, public airport use. The county's rezoning ap-

---

1. The court currently finds the need to vacate its July 27, 1988 order that denied the motions to dismiss of the defendants Dolezal, Curry, Sharit and Richards. With all the extensive filings now before the court, the court believes the interests of justice dictate that these defendants' motions be viewed as a whole with the current ones. The court, therefore, will vacate the previous order and consider anew these defendants' motions.

plication was approved by the County Planning and Zoning Department in January, 1980. In September, 1980, the county commissioners upheld that decision and a series of lawsuits ensued. In October, 1980, plaintiffs filed a petition for certiorari in state Circuit Court alleging that the rezoning was in violation of Florida law. This case was entitled *New Port Largo, Inc. v. Monroe County, et al.*, Case No. 80–1164–17. In April, 1982, Monroe County filed a constructive trust suit in state Circuit Court, claiming that as a result of an alleged oral agreement between the County and Sheley, the equitable ownership of the subject property vested in the county. This case was entitled *Monroe County v. New Port Largo, Inc.*, Case No. 82–432–17. The county filed a second case in state Circuit Court in December, 1982. This suit for unjust enrichment alleged that New Port Largo purchased the property even though it knew the County and not the seller Sheley owned the subject property. This action was entitled *Monroe County v. New Port Largo, et. al.*, Case No. 82–1606–17.

In April, 1983, State Circuit Judge Knuck granted summary judgment against the county's constructive trust suit. Circuit Judge Lester dismissed the county's unjust enrichment suit with leave to amend the complaint. In May of 1983, the county filed an amended unjust enrichment suit, but in September of that year, stipulated in open court to dismiss the suit. In November of 1983, the Florida Third District Court of Appeal reversed the summary judgment entered against the county. 441 So.2d 173. In March of 1984, Judge Knuck conducted a non-jury trial on the merits and found for the defendant New Port Largo. The Third District Court of Appeal affirmed final judgment on the merits in April, 1985. 467 So.2d 757. Subsequently, in January of 1986, Judge Lester granted

New Port Largo a final summary judgment on its petition for certiorari.

On July 7, 1987, the plaintiffs filed this complaint in the United States District Court. The plaintiffs seek a variety of relief in eleven counts. The first three counts are for violations of the Federal Civil Rights Acts, with Count I alleging a violation of 42 U.S.C. § 1983, Count II alleging a violation of 42 U.S.C. § 1985, and Count III alleging a violation of 42 U.S.C. § 1986. The remaining counts are pendant state law claims, with Count IV alleging an unjust taking, Count V asserting an abuse of process claim, Count VI a malicious prosecution claim, Count VII a disparagement of title claim, Count VIII a tortious interference claim, Count IX an intentional infliction of emotional stress claim, Count X a negligent infliction of emotional stress claim, and Count XI a broad-based conspiracy claim.

■ On March 11, 1988, the court approved a stipulation wherein the parties agreed that certain of these claims would be dismissed. Pursuant to this order, Counts I through VIII, and paragraphs 193(a) through (f) of Count XI were dismissed as they related to the individual plaintiff shareholders.[2] Counts V–XI were dismissed as they related to Monroe County. The plaintiffs' claim for punitive damages was dismissed only as it related to the 42 U.S.C. § 1983 claim.

The defendants have now moved to dismiss the remaining counts of the complaint asserting several arguments. These defendants make three arguments for dismissal of the federal claims: the claims are barred under *res judicata;* the statute of limitations completely bars this action, and the plaintiffs have failed to state a § 1985 claim. The Commissioners and Planners also seek dismissal of the federal claims

**2.** The plaintiffs have agreed to dismiss Counts I–XII with respect to all defendants as they relate to the plaintiffs' status as individual shareholders. The court agrees with the plaintiffs' reasoning, and will order dismissal.

The plaintiffs also assert Counts IX, X, and XI in their individual capacities and the defendants seek to dismiss these claims as they relate to the

plaintiffs' individual status. These claims, seeking to remedy emotional distress and individual damages derived from the purported conspiracy, allege individual injury. The plaintiffs can properly assert these claims in their individual capacity. The defendants' motions to dismiss these counts, therefore, will be denied.

based upon alleged absolute immunities. All these defendants also assert several arguments for the dismissal of the pendant claims based on Florida law. Because the resolution of the federal issues here render as moot many of the arguments based on Florida law, the court will first address the *res judicata*, statute of limitations, and § 1985 arguments, then decide the absolute immunity questions, and end its analysis with a discussion of the remaining, relevant Florida law arguments.

## I. THE *RES JUDICATA*, STATUTE OF LIMITATIONS AND § 1985 REASONS FOR DISMISSAL.

Upon consideration of the record, the motions to dismiss and oral argument of counsel, the court denies the motions to dismiss based on the *res judicata* and statute of limitations grounds. The motions to dismiss the § 1986 claim (Count III) as time-barred, and the § 1985 claim for failing to state a cause of action, are granted.

### a. The *res judicata* argument.

The defendants[3] argue that two state court judgments bar the plaintiffs from asserting these federal claims. First, they submit that these plaintiffs voluntarily dismissed their counterclaim in the constructive trust suit, and that they, therefore, are barred from now raising any claims arising out of facts similar to those supporting the counterclaim. The defendants also make an alternative argument. They contend that the final judgment in the constructive trust suit bars all claims based

on the same or similar facts even if the dismissal of the counterclaim has no preclusive effect. This argument is premised upon the compulsory counterclaim rule. These arguments, however, do not square with the principles of *res judicata*, and, therefore, the court rejects them.

The court beings its analysis by addressing the question of whether a final state court judgment can preclude subsequent federal constitutional claims. The Eleventh Circuit has answered the issue. An action under § 1983 in federal court is precluded if the issues involved in the action could have been raised in a prior state court proceeding. *See Jones v. Preuit & Mauldin*, 808 F.2d 1435, 1444 (11th Cir. 1987) (interpreting *Migra v. Warren City School District Bd. of Education*, 465 U.S. 75, 80–85, 104 S.Ct. 892, 895–98, 79 L.Ed.2d 56 (1984)); *see also Webber v. Mills*, 595 F.Supp. 514, 515–516 (S.D.Fla.1984). To determine the preclusive effect of such a state court proceeding, a federal court must apply the law of the state that rendered the judgment. *See McDonald v. Hillsborough County School Board*, 821 F.2d 1563, 1565 (11th Cir.1987). Title 28 U.S.C. § 1738 requires the federal court to give the same preclusive effect to a state court judgment as the state court would give. *See also Magra v. Warren City School District Board of Education*, 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Accordingly, the Florida law of *res judicata* applies.

---

3. Although the record at this state is extremely limited, the court finds that only Monroe County can properly assert a *res judicata* defense. This defense is only available to defendants who were parties in the previous action. *Kent v. Sutter*, 40 So.2d 145 (Fla.1949). In some cases, the privy of a record party may be entitled to the defense. *See In re Hastin Estate*, 63 So.2d 320 (Fla.1953). The persons generally considered as privies are those with a mutual or successive relationship to the same rights the parties presented in the first action. *See Osburn v. Stickel*, 187 So.2d 89 (Fla. 3d DCA 1966). Monroe County appears to be the only named plaintiff in the constructive trust suit. The County Commissioners did not have a successive or mutual interest in that action. Similarly, the Planners and Sharit had no interest in the constructive trust action. The *res judicata*

defense, therefore, is only available to Monroe County.

Nevertheless, even if the defense was available to all defendants, the court's *res judicata* analysis above would defeat the motions to dismiss. All these defendants make the same argument, and the court's discussion defeats all these contentions.

Moreover, the court could rewrite the *res judicata* defense of the Commissioners, Planners, and Sharit as one of offensive collateral estoppel. Collateral estoppel could bar relitigation of certain issues even if these defendants were not part of the previous action. This defense, however, is limited to those questions actually decided in a previous action. As is noted in the text above, none of the issues the plaintiffs now present was previously adjudicated; hence, this defense would also be inapplicable.

Under Florida law, a final judgment is absolute. The judgment puts to rest all matters which were or could have been determined in that action, and bars subsequent actions between the same parties based on the same or substantially similar causes of action. *See O'Brien v. Brickell Townhouses, Inc.,* 439 So.2d 982 (Fla. 3d DCA 1983). In Florida the doctrine of *res judicata* applys when four "identities" exist. These identities are (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the person for or against whom the claim is made. *See Albrecht v. State,* 444 So.2d 8, 12 (Fla.1984).

For the most part, the doctrine of *res judicata* appears applicable. The first, third and fourth identities are present. Also, Florida finds the second identity to be satisfied if the current action presents any issue which was or could have been litigated in the first action. *See Albrecht v. State,* 444 So.2d at 12; *McDonald v. Hillsborough County School Board,* 821 F.2d at 1565. The test for determining whether the second cause of action is identical to the first is whether facts essential to bringing the second action are identical to those facts which were essential to the maintenance of the prior state action. *See Miami Beach v. Prevatt,* 97 So.2d 473 (Fla.1957). Generally, if the testimony produced in the first action is essentially the same as the testimony that would be required to try the second action, then Florida courts conclude that both actions are founded upon the same cause of action. *See Gordon v. Gordon,* 59 So.2d 40 (Fla.1952) *cert. denied* 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952). Because the federal claim here alleges a constitutional taking and the counterclaim was for an unlawful taking, the second identity under the above precedents appears to be satisfied. Necessarily, the evidence to establish both of these claims is essentially similar. Accordingly, on the surface the four identities necessary for the doctrine of *res judicata* appear to be present.

▮ Under stricter scrutiny, however, the court finds the *res judicata* principles inapplicable here. A voluntary dismissal without prejudice of a counterclaim is not a final decision on the merits. A final judgment or decree on the merits is essential to the operation of the doctrine of *res judicata*. *See Lewis v. Connecticut General Life Insurance Company,* 427 So.2d 254 (1983) (citing authority). Florida generally considers voluntary dismissals to be beyond the scope of the *res judicata* doctrine. In *Wormser v. State,* 384 So.2d 310 (5th DCA 1980), the court found that a voluntary dismissal without prejudice, even after the jury rendered its verdict was an inadequate "final" judgment for *res judicata* purposes. The *Wormser* court's finding is sound, for a voluntary dismissal without prejudice is not an adjudication on the merits. Because the voluntary dismissal without prejudice of the counterclaim is not a "final" judgment, the doctrine of *res judicata* is inapplicable.

▮ For similar reasons, the court rejects the theory that the final judgment entered against defendants bars the plaintiffs' litigation of these federal claims. In essence, the defendants maintain that even if the voluntary dismissal of the counterclaim is not entitled to *res judicata* effect the federal claims here should have been asserted as a counterclaim in the constructive trust suit. Because these claims were not asserted as counterclaims, the defendants now argue that they are barred. A court may bar a party from asserting a claim in a subsequent action if that party failed to raise that claim as a counterclaim in the previous action. To determine whether the *res judicata* doctrine would bar such a claim, the court must determine whether the proposed counterclaim would have been compulsory or permissive. If compulsory, the claim is barred, *Newton v. Mitchell,* 42 So.2d 53 (Fla.1949); if permissive, the claim can be relitigated. *Metropolitan Casualty Insurance Co. v. Walker,* 151 Fla. 314, 9 So.2d 361 (1942). Under this analysis, therefore, the plaintiffs' claims in this action are barred if they would have been compulsory counterclaims under Florida law in the constructive trust suit.

The plaintiffs' federal claims were not compulsory counterclaims in the constructive trust suit. Florida law defines a compulsory counterclaim as a claim that arises out of the same transaction or occurrence forming the basis of plaintiffs' claim. *See* Fla.R.Civ.P. 1.170(a). The county's constructive trust suit concerned transactions centering around a trust agreement that purchased and sold the subject property between 1967 and 1970. The plaintiffs' federal civil rights claims here revolve around the defendants' activities from 1979 until 1985. Moreover, the alleged defendants' activities in the federal counts are unrelated to the trust agreement and initial purchase and sale of the property. Consequently, the plaintiffs' current claims, as alleged, did not arise out of the same transactions or occurrences forming the basis of Monroe County's constructive trust suit. These federal claims, therefore, were not compulsory counterclaims under Florida law, and, therefore, are not barred from litigation in this forum.[4]

b. The statute of limitation arguments.

The defendants maintain that all of the plaintiffs' claims are time-barred by appropriate statute of limitations. They suggest two critical dates. The first date is 1979, when the plaintiffs allege that most of the purported harms occurred. The second date is July, 1987, when the plaintiffs filed their complaint. The defendants maintain that no limitations analysis allows claims founded upon facts in 1979 to be litigated in 1987. The plaintiffs counter, arguing that the defendants themselves tolled the applicable statutes of limitations by their continuing wrongdoing.

With respect to the first two federal claims, the § 1983 and § 1985 causes of action, the statutory language of these sections does not specify a limiting period. To determine an appropriate time frame, a federal court must follow a three step process. *See Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984). The first step requires the federal court to look to the laws of the United States so far as such laws are "suitable to carry the civil and criminal civil rights statutes into effect." *Id.* If no suitable federal rule exists, the federal court must undertake the second step by considering application of state common law as modified and changed by the constitution and statutes of the forum state. *Id.* As the third step, the federal courts must apply the state law only if it is not "inconsistent with the Constitution and laws of the United States." *Id.* The Supreme Court in *Wilson v. Garcia,* 471 U.S. 261, 267–68, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985), held that no law of the United States was suitable for a limitations period for § 1983 claims. The Court, therefore, required federal district courts to apply the most appropriate or most analogous state statute of limitations to a § 1983 claim. The *Wilson* court found the personal injury statute of limitation of the state whose law is to be applied to be the most analogous state statute of limitations for a § 1983 claim. *Wilson,* 471 U.S. at 275, 105 S.Ct. at 1947.

Under this analysis, this court must determine the most appropriate personal injury statute of limitations of Florida. Florida has no personal injury statute of limitations *per se.* Nonetheless, the parties agree that the four year periods of Fla.

---

4. The court finds the defendants' authorities to be unpersuasive. Perhaps the best authority for the defendants' arguments is *Quality Type & Graphics v. Guetzloe,* 513 So.2d 1110 (Fla. 5th DCA 1987). *Quality* is easily distinguished. In *Quality Type,* Quality sued Guetzloe for account stated and quantum meruit but withdrew the quantum meruit claim prior to trial. Quality lost under account stated theory. Subsequently, Quality sued Guetzloe for quantum meruit, and the court found *res judicata* applicable. *Id.* at 1111. Under the facts of *Quality Type,* the quantum meruit claim arose from the same transaction as the account stated claim. Under tradi-

tional *res judicata* analysis, Quality had to raise the quantum meruit claim in the first action or that cause of action would be barred. Quality's dismissal of the quantum meruit claim, therefore, was a barred a subsequent action under this theory. Here, these current claims did not arise out of the same transactions as the constructive trust lawsuit. Consequently, these current claims did not have to be raised in the constructive trust action. The plaintiffs here are not barred from bringing those claims because they were not obligated to bring these claims in the constructive trust action.

Stat.Ann. § 95.11(3)(a), (*o*) and (p) apply. These statutory subsections govern actions for intentional torts. As such, the court finds that they are the appropriate statute of limitations here. The sections 1983 and 1985 claims here, therefore, are governed by this four year limitations period.

In stark contrast to the above federalism analysis section 1986 claims are specifically governed by a one-year statute of limitation. The statutory language of 42 U.S.C. § 1986 mandates that this claim be brought within one year after the cause of action has accrued.

▆▆▆▆ Irrespective of the fact that a state statute of limitations governs two of the three federal claims, federal law exclusively determines when all three causes of action accrue. *See Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422, 424 (11th Cir.1983) (citing *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980); *see also Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir.1980)). Under federal law, the time of accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Calhoun*, 705 F.2d at 424; *Lavellee*, 611 F.2d at 1131.

With this background, the court now determines whether under the allegations of the complaint any of these claims are time barred. In so doing, the court first considers the plaintiffs' arguments concerning tolling doctrines for the federal claims and then applies the appropriate limitations periods.

The plaintiffs knew of the invasion of their legal rights in 1979. The complaint lists this year as the date of rezoning to a public airport district. Plaintiffs agree that the rezoning is part of the basis of this lawsuit. Absent tolling of the statute of limitations, the plaintiffs concede that all three federal claims are time-barred.

The plaintiffs, however, argue that the limitations periods were tolled according to the "continuing wrong" theory. The continuing wrong tolling theory exists "where a continuous chain of events or course of conduct is involved, in which case the cause of action accrues at the time of the final

act in that series of events or course of conduct." *See Barbaccia v. County of Santa Clara*, 451 F.Supp. 260, 266 (N.D. Calif.1978); *Coleman v. Clark Oil & Refining Co.*, 568 F.Supp. 1035, 1040 (E.D. Wisc.1983). The plaintiffs' theory is that the defendants' activities constituted a continuing wrong, until January 2, 1986, when Circuit Judge Lester issued a writ of certiorari and struck down the zoning provision. Accordingly, they timely asserted all three federal claims by filing their complaint on July 7, 1987. The court now addresses this theory with respect to each of the federal civil rights claims.

The continuing wrong tolling doctrine may not apply to section 1986 claims. The best argument in favor of application rests upon a unification of two realizations. Because the continuing wrong doctrine has been applied in section 1985 cases, *see Gordon v. City of Warren*, 579 F.2d 386 (6th Cir.1978), and because liability under section 1986 is dependent upon the existence of a claim under section 1985, *see Grimes v. Smith*, 776 F.2d 1359 (7th Cir.1985); *Weseman v. Meeker County*, 659 F.Supp. 1571 (D.Minn.1987), a court applying the doctrine to the § 1985 actions but not to § 1986 claims is incongruous. The best argument against application is that the one year statute of limitations is specifically spelled out in the statute, and, thus, a court must always follow this limitation. *See E.G. Creative Environment, Inc. v. Estabrook*, 491 F.Supp. 547, 554 (D.Mass. 1980) (finding in dicta that all claims based upon activity occurring prior to one year before the filing of the federal suit were barred even though the action centered around a five year zoning dispute.).

▆▆▆▆ The court, however, need not decide which of these arguments is best. Under either argument, the plaintiffs' § 1986 claim here is time-barred. Even after the court assumes that the plaintiffs' tolling theory applies, and therefore, the § 1986 claim accrues on January 2, 1986, the claim is barred by the applicable one year statute of limitations. The plaintiffs' filed this action on July 7, 1987, which is eighteen months after their own purported accrual

date. As the complaint itself indicates, the filing of this action occurred beyond the prescribed one year period, and, therefore, the section 1986 claim is time-barred.

■ When, after taking the plaintiffs' allegations in the complaint as true, a claim is time barred on its face, the granting of the motion to dismiss is proper. *See Kaiser Aluminum & Chemical Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Accordingly, the court dismisses the section 1986 claim with respect to all defendants.

■ To determine whether the continuing wrong theory applies to the § 1983 and § 1985 claims, the court must first determine the meaning of "a continuing wrong." Both parties here have offered differing interpretations, and federal decisions vary over the precise instances when a "continuing wrong" exists. This court holds that the focus of the continuing wrong doctrine should be on the defendants' purported wrongful activities, and not upon the plaintiffs' alleged suffering. Accordingly, if the defendants' activities constitute a continuing or additional violation of the law, then the doctrine applies; however, if the defendants' activities do not constitute a continuing violation, then the doctrine does not apply, irrespective of the fact that the plaintiffs' harm from the defendants initial violation may continue. The court reaches these conclusions after reviewing the conflicting decisions on the continuing wrong doctrine.

In *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558–559, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977), the Supreme Court discussed the continuing wrong tolling doctrine. The Court exclusively emphasized the defendants activity in reaching its result. The Court stated that the critical question to be resolved before it would apply the doctrine was whether the defendants subsequently violated the civil rights laws. *Id.* at 558, 97 S.Ct. at 1889. In *Evans*, United Airlines established a seniority system that gave present effect to a past act of discrimination. *Id.* The Court specifically noted that not only did no

present violation existed but no violation occurred after the initial discriminatory wrongdoing. Because United Airlines had not subsequently violated Title VII, no continuing wrong existed irrespective of the fact that the plaintiff was still injured from the past discriminatory act. The court, therefore, focused exclusively upon the defendant activities and concluded that unless the defendants committed subsequent violations of the law, the doctrine did not apply. *Id.*

In essence, several courts of appeals have agreed with *Evans*. In *Altair Corp. v. Carmen Pesquera De Busquets*, 769 F.2d 30 (1st Cir.1985), the First Circuit noted the distinction between a continuing violation and a single act that has continuing consequences. In *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981), the Ninth Circuit concluded that a continuing violation is "occasioned by continuing unlawful acts, not by continued ill effects from an original violation." Both the *Ward* and *Altair* courts emphasized the need for a subsequent action by the defendant that violated the law. *Ward*, 650 F.2d at 1147; *Altair*, 769 F.2d at 32.

■ The distinction between a continuing wrong and a continuing injury has great consequences in zoning cases. Often, a wrongful zoning of a piece of property can take years to correct. Courts have struggled to determine whether a zoning wrong begins and ends with the passage of the zoning ordinance or continues until the wrongful ordinance is dissolved. Normally, in an action to rectify the government's taking of private property, the appropriate statute of limitations runs from the time of appropriation. *See Schaefer v. Stack*, 641 F.2d 227, 228 (5th Cir.1981); *Kittrel v. City of Rockwell*, 526 F.2d 715, 716 (5th Cir. 1976). Nevertheless, in *Lockary v. Kayfetz*, 587 F.Supp. 631, 636 (N.D.Calif.1984), the court noted in dicta that the statute of limitations in a civil rights suit alleging a wrongful taking by a city through an unlawful zoning restriction did not begin to run until the offending restraint had been removed. *Lockary* is, however, the exception. All unlawful taking claims should be

treated similarly, irrespective of the fact that the taking occurred through a zoning ordinance. In all such instances, the government has performed a single act that "took" the property. Accordingly, most "taking" situations are not within the continuing wrong doctrine.

This conclusion, however, does not mean that the continuing wrong doctrine could never apply in the zoning context. As the Fourth Circuit noted in *Ocean Acres Limited Partnership v. Dare County Board of Health,* 707 F.2d 103, 105–106 (4th Cir. 1983), certain other actions may combine with the initial government activity and be sufficient to evoke the continuing wrong toll. In *Gordon v. City of Warren,* 579 F.2d 386 (6th Cir.1978), the Sixth Circuit considered such a situation. In *Gordon,* the city mistakenly issued a building permit to the plaintiffs, who started to build an apartment complex. The city realized the parties made a mutual mistake with respect to an ordinance requiring the construction of a highway, and directed the construction to stop. When the property owners refused to dismantle the buildings, the city sought an injunction. The trial court entered judgment for the city, and directed that two of the buildings be removed. The defendants appealed and the Michigan Court of Appeals reversed. The city then appealed to the Michigan Supreme Court which affirmed the Michigan Court of Appeal's decision in favor of the property owners. On these facts, the Sixth Circuit found that the statute of limitations period was tolled under the continuing wrong doctrine until the date the Michigan Supreme Court upheld the invalidity of the ordinance. *Gordon,* 579 F.2d at 391–392. The *Gordon* court believed the city engaged in a continuing course of action, including the lawsuits, which made "it impossible for the plaintiffs to enjoy the full use of their property until that time." *Id.* at 391. The court found that because the city continually appealed, the question of whether the city had in fact taken the plaintiff's property for public use remained in controversy. *Id.* Accordingly, when the Michigan Supreme Court finally declare the ordinance invalid, the city's last act de-

signed to take the property in violation of the civil rights law ended. At this point in time, the cause of action ultimately accrued to the property owners. *Id.* at 392.

■ As the plaintiffs' complaint indicates, this case falls within the holding in *Gordon.* The plaintiffs alleged that the defendants engaged in a conspiracy which manifested itself through the several alleged acts that purportedly took the plaintiffs property without compensating them for it. The first act was the passage of the zoning ordinance. The next acts were the filing of two lawsuits by Monroe County in an attempt to permanently take the property. The result of these various acts by defendants was to continue the temporary taking of the plaintiffs property. Plaintiffs allege these acts constituted continuing violations of the Civil Rights Laws. Under the reasoning of *Gordon,* therefore, the court can apply the continuing wrong tolling doctrine.

Nevertheless, the mere fact that additional wrongs were committed besides the unlawful zoning does not automatically invoke the theory. The continuing wrong doctrine is an equitable doctrine. A court must balance all the equities involved before applying the doctrine. In *Jordan v. Rocco,* 648 F.Supp. 942 (N.D.Ohio 1986), the court formulated a two prong test designed to incorporate these equitable considerations into the determination of whether the continuing wrong tolling principle applies. *Id.* at 946. The first prong concerns the plaintiffs' actions. The plaintiff challenging the validity and constitutionality of an ordinance must be "diligent and vigilant in pursuing his or her remedies against the validity of the ordinance." *Id.* The second tenant is that the government agency must continuously oppose the individual and enforce the ordinance. *Id.*

The complaint here alleges that the plaintiffs were vigilant in pursuing their remedies against the validity of the ordinance. They challenged the ordinance before the Planning and Zoning Department. They appealed the Planning Department's adverse decision to the county commissioners. When the county commissioners upheld the

Planning & Zoning Department's ruling, they filed a petition for writ of certiorari in the Circuit Court. They were ultimately successful on January 2, 1986, approximately eighteen months before they filed this suit. Moreover, as already noted, the county took other actions in an alleged attempt to take the property without compensation. Plaintiffs' allege that these government activities continuously opposed the plaintiffs and constituted a continuing attempt to take the property. As such, this activity satisfies the second prong or continuing controversy requirement of the *Jordan* test. Because both aspects of the *Jordan* test are satisfied here, the continuing wrong tolling doctrine applies.

 The court now determines the parameters of the tolled period. The complaint states the last action taken by the County and the purported conspiracy members in the alleged taking scheme was when the County appealed the decision in the constructive trust suit.[5] This final act terminated when the Third District Court of Appeal affirmed Judge Knuck's finding against the County in the constructive trust suit. As in *Gordon*, this judicial decision ended the defendants last act that was designed to permanently take the property and had the effect of continuing the temporary taking. Under the continuous wrong theory, a cause of action is tolled and only accrues at the time of the final act in that series of events or course of conduct. *See United States v. Dickinson*, 331 U.S. 745, 748–49, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). The final act of the defendants here occurred on April 9, 1985 when the Third District Court of Appeals affirmed the final judgment in the constructive trust suit.

After applying the continuing wrong theory here, the court concludes that these two federal claims were timely filed. Under this tolling doctrine, the § 1983 and § 1985 claims accrued on April 9, 1985.

The plaintiffs filed this action on July 7, 1987, which was within the governing four year limitations period. These actions, therefore, are timely.

The § 1986 claim is dismissed because that claim was not timely filed. The court applies the continuing wrong tolling doctrine to the § 1983 and § 1985 claims and finds that the plaintiffs timely filed these actions. The court now turns its attention to the substance of the allegations in the § 1985 claims.

All the defendants seek to dismiss the § 1985 claim for failing to state a cause of action because plaintiffs are not the type of individual Congress intended to protect by enacting the statute. The plaintiffs counter by arguing that they fall within the protections of the equal protection clause of the Fourteenth Amendment, and § 1985 guarantees all the protections of this Amendment. After examining both views, the court dismisses this claim.

Count II alleges violations of two subsections of § 1985. The first alleged violation is of § 1985(2) and deals with the defendants' attempts to impede, hinder and obstruct the due course of justice in the State of Florida. The second alleged violation is of § 1985(3). This claim alleges that the defendants denied the plaintiffs equal protection of the laws solely because of the plaintiffs' status as real estate developers. The defendants seek a dismissal under both subsections.

 With respect to § 1985(3) claim, the court must draw a fundamental distinction. The equal protection clause of the Fourteenth Amendment guarantees that a government will treat similar individuals in a similar manner. Accordingly, the equal protection clause concerns itself with all governmental drawn classifications, although the analysis under the Clause requires that classifications based on certain characteristics be treated more strictly.

---

5. The court specifically rejects the plaintiffs' alleged January 2, 1986 date of accrual. This is the purported date when the writ of certiorari case terminated. The plaintiffs initiated this action. Under no circumstances can this case be construed as a defendant's action designed to continuing the taking. The defendants have to be allowed to defend an action brought against them. Because the defendants did not institute the lawsuit, this action cannot be an activity of the defendant for "continuing wrong" purposes.

Cf. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (holding that a zoning ordinance created a classification in violation of the equal protection clause.) Congress, on the other hand, never intended § 1985(3) to be as broad. "The predominant purpose of § 1985(3) was to combat the prevalent animus against Negros and their supporters." *See United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). The *Scott* Court noted that the question of whether § 1985(3) was intended to reach any class-based animus other than animus against blacks was a close question. *Id.* The *Scott* Court reviewed the legislative history concerning the Civil Rights Act of 1871 and concluded that Congress intended this provision to be exceedingly narrow. *Id.* The Court concluded that no convincing legislative history existed to support the proposition that Congress intended § 1985(3) to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities. *Id.* at 837, 103 S.Ct. at 3361. In the Court's opinion, "such a construction would extend § 1985(3) into the economic life of the country in a way that we doubt the 1871 Congress would have intended when it passed the provision in 1871." *Id; see also Daigle v. Gulf States Utilities Co. v. Local No. 2286*, 794 F.2d 974, 979 (5th Cir.1986).

Under this analysis, therefore, the plaintiffs' claim fails. The defendants' purported discrimination is directed against the plaintiffs as real estate developers. The classification based upon real estate developers is one founded upon the defendants' economic views, or status, or activities. The alleged discrimination classification is not based on either race or minority-supporting political status. Accordingly, Congress never intended § 1985(3) to remedy the defendant's alleged denial of the equal protection of the laws to the plaintiffs because they are real estate developers.

■ A similar analysis follows for the § 1985(2) component of the plaintiffs' § 1985 claim. Once again, a distinction first needs to be drawn. Subsection 1985(2) has two portions. The first portion concerns conspiracies that interfere with the administration of justice in the federal courts. The second part prescribes conspiracies that interfere with the administration of justice in state courts. *See Kush v. Rutledge*, 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983) (noting distinction). The first part of § 1985(2) does not require race or class based animus. *Kush v. Rutledge*, 460 U.S. at 720, 103 S.Ct. at 1484–85. The second part of subsection 1985(2), however, requires class based animus. *See Daigle v. Gulf States Utilities Co., Local No. 2286*, 794 F.2d 974, 979 (5th Cir.1986); *See also Harrison v. Springdale Water & Sewer Commission*, 780 F.2d 1422, 1430 (8th Cir.1986); *Bretz v. Kelman*, 773 F.2d 1026, 1030 (9th Cir.1985); *Williams v. St. Joseph's Hospital*, 629 F.2d 448, 451 (7th Cir.1980); *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir.), *cert. denied* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978). The reason for this requirement is that the second part of § 1985(2) is directed at conspiracies to deprive equal protection of the laws, and the equal protection language in subsection 1985(2) is paralleled in subsection 1985(3). *Daigle*, 794 F.2d at 979.

■ Because the appellant does not meet the class based animus requirement under subsection 1985(3), his subsection 1985(2) claim equally fails. The plaintiff relies upon the second portion of subsection 1985(2), claiming that the defendants conspired to impede and hinder the due course of justice in the State of Florida. Once again, the alleged violation of the equal protection of the laws is premised upon the defendants' discrimination against the plaintiff as a real estate developer. This alleged discrimination exists only because of the plaintiffs' economic status as real estate developers. Congress never intended § 1985 to remedy this type of discrimination. Accordingly, Count II in its entirety will be dismissed.

## II. THE IMMUNITIES TO THE FEDERAL CLAIMS.

■ Both the Commissioners and Planners seek to dismiss the plaintiffs' federal

claims by asserting absolute immunities. These defendants assert these immunities because they believe they enacted the rezoning ordinance, that action gives rise to the § 1983 claim here in their legislative capacity. After reviewing these arguments, the court will dismiss the § 1983 claim as to all these defendants, except Alison Fahrer.[6]

■ After the Supreme Court's decision in *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), courts have consistently held that local legislators are absolutely immune under § 1983 for conduct performed in furtherance of their legislative duties. *See Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982); *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1195 (5th Cir.1981); *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1350 (9th Cir.1982. No immunity, however, exists for actions outside the sphere of legitimate legislative activity. *See generally Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Accordingly, the absolute immunity inquiry becomes one of whether the local government officials acted within legislative activity.

■ Before determining whether the Commissioners and Planners were acting in their legislative capacity, the court must consider both a substantive and a procedural rule. On the substantive side, absolute immunity is given only for legislative functions, while qualified immunity is

given to those officials acting in their executive function. This analysis leads to the procedural rule. Absolute immunity defeats a damage suit at the pleading stage, *see Lockary v. Kayfetz*, 587 F.Supp. 631, 638 (N.D.Calif.1984), while qualified immunity is available only if the evidence shows that those actions were taken in good faith, and, thus, is available at the summary judgment or trial stage. *See Gorman Towers v. Bogoslavsky*, 626 F.2d 607, 611 (8th Cir.1980).

■ The court must now determine whether the Commissioners and Planners' actions were legislative or executive. The complaint essentially asserts three activities of these defendants that violated § 1983. The first activity concerns the Planning & Zoning Board's filing the application for the rezoning of the subject property. The second action involves the Planning Board's approval of its own application. The third alleged action in County Commissioner's upholding that decision. The complaint also alleges that one Commissioner, Alison Fahrer, maliciously testified against the plaintiffs' interests in a somewhat related lawsuit.

■ These first three actions are exclusively legislative, and, therefore, the Commissioners and Planners are entitled to absolute immunity with respect to these activities. Legislative activity involves the promulgation of legislation of a general or prospective nature. *Lockary*, 587 F.Supp

---

6. Before the court enters into this inquiry, the court must distinguish officials sued in their official capacity from those sued in their individual capacity. Individual capacity suits seek to impose personal liability upon a governmental official for actions taken under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1984)). Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166,

105 S.Ct. at 3105. Accordingly, when an official is sued in his official capacity, the suit does not seek personal liability.

The plaintiffs have asserted these counts against the County Commissioners and the Planners in their official capacities. These actions, therefore, are essentially against Monroe County. Because the plaintiffs have already sued Monroe County, the plaintiffs in essence seek a double recovery. This understanding alone would mandate this court to dismiss these individuals. Nevertheless, because these defendants are absolutely immune from § 1983 liability even in their individual capacities, the court will consider these defendants as sued in their individual capacity. Accordingly, the immunity discussion above is entirely appropriate, and would bar this action against these individuals in any context.

at 637, *citing Barbaccia v. County of Santa Clara,* 451 F.Supp. 260, 268 (N.D.Calif. 1978). Generally, the passing of zoning ordinances are part of the legislative function. *See Gorman Towers, Inc.,* 626 F.2d at 612, 613. Similarly, a veto by the Mayor or Governor is part of the legislative process. *See Hernandez,* 643 F.2d at 1194. In essence, any official proposing a policy or making a policy is acting in a legislative capacity. *See Hernandez,* 643 F.2d at 1194; *Healy v. Town of Pembroke Park,* 643 F.Supp. 1208, 1213, 1214 (S.D.Fla.1986). These instances contrast sharply with actions found to be of an executive nature. Of course, if the individual officials directed action be taken to carry out these policies the action would be an executive, as when a City Supervisor directs the county counsel to file a lawsuit. *See Kuzinich,* 689 F.2d at 1350; *Lockary,* 587 F.Supp. at 638. With respect to the first three activities, the Commissioners and Planners were acting wholly within their legislative functions. The complaint indicates that these defendants proposed a policy change and then made a policy decision. The filing of an application for rezoning, as well as voting on the rezoning proposal require these defendants to balance social needs in their official capacity. *See generally Kuzinich,* 689 F.2d at 1350. As such, these defendants are entitled to an absolute immunity from the alleged § 1983 violations. Accordingly, the court dismisses Count I against the Commissioners and Planners with respect to the first three alleged activities.

■■■■■ With respect to Alison Fahrer's purported false testimony at a state court proceeding, the court finds that she is not entitled to an absolute immunity. Testifying in a judicial proceeding is not a legislative activity. The court cannot find that Fahrer has absolute immunity with respect to this activity. The court, therefore, will

deny the motion to dismiss the § 1983 claim with respect to this alleged activity.[7]

## III. THE APPLICATION OF PENDANT JURISDICTION PRINCIPLES.

■■■■ With respect to the Commissioners and Planners other than Fahrer, the court should no longer exercise jurisdiction over them on the pendant claims. In *United Mine Workers of America, Inc. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court held that a federal district court should not exercise discretionary jurisdiction over pendant state claims after the federal claims are dismissed pursuant to Fed.R.Civ.P. 12. Accordingly, the court will dismiss without prejudice the pendant state claims with respect to all the Commissioners and Planners except defendant Alison Fahrer.

## IV. THE ARGUMENTS FOR DISMISSAL OF THE STATE LAW CLAIMS.

The court now turns to the remaining dismissal motions concerning the pendant claims of Monroe County, Sharit and Fahrer. These arguments track those raised for the federal claims. These defendants initially argue that plaintiffs' claims are barred by the doctrine of *res judicata,* or, in the alternative, by the appropriate statute of limitations. They next seek dismissal based on certain state law immunities. They then seek dismissal of the malicious prosecution and abuse of process claims for failure to state causes of action. They conclude their arguments by noting that at the very least, the punitive damage demands should be stricken.

### A. The *Res Judicata* and State of Limitations Arguments.

The defendants make *res judicata* and statute of limitations arguments in an at-

---

7. The defendant Sharit also argues that he is immune. He premises this argument upon his status as the attorney representing the homeowners. He does not assert that he has any official, governmental authority.

This argument is patently frivolous. Not surprisingly, Sharit produces no authority to sup-

port this position. An attorney generally acts as an agent for his client. As with all principle-agent relationships, the agent and principle are liable, although some indemnities may exist. Even if these common-law indemnities existed here, they would not insulate Sharit from liability under the federal civil rights laws.

tempt to dismiss the state law claims.[8] The defendants premise these arguments upon reasoning similar to that supporting their arguments on the dismissal of the federal claims. As a necessary consequence, much of the court's analysis that follows is similar to its previous discussion of the federal issues.

Again, the defendants point toward the plaintiffs' counterclaim in the constructive trust lawsuit and argue that the plaintiffs raised in that counterclaim the very same claims they now do. The defendants, therefore, argue that these claims cannot be relitigated here. As an alternative argument, the defendants contend that these current claims should have been raised in the constructive trust suit, and because these causes of action were not part of the previous action, the plaintiffs cannot assert them here.

As the court found with respect to these same arguments for dismissal of the federal claims, these arguments are unpersuasive. A *res judicata* effect cannot flow from the voluntary dismissal without prejudice of a counterclaim. Under Florida law, this type of judicial action is not a final adjudication on the merits. Similarly, these current claims did not have to be asserted in the constructive trust action in order to avoid a *res judicata* effect. These current causes of actions would not have been compulsory counterclaims in the previous suit under Fla.R.Civ.P. 1.170(a).

In considering the statute of limitations arguments, the court will first determine the appropriate limitations period, and then apply the appropriate periods to the allegations of the complaint.

As a stark contrast to the methodology utilized for the federal claims, most of the

Florida limitations periods are governed by statutes. Count IV for unjust taking, Count V for abusive process, Count VI for malicious prosecution, Count VIII for tortious interference, Count IX for intentional inflictional emotional distress, and Count X for negligent inflictional emotional distress are governed by the four year statute of limitations prescribed in Fla.Stat.Ann. § 95.11(3)(*o*) and (p). Count XI, the conspiracy count, is also governed by a four year statute of limitation. *See Faulk v. Allen*, 152 Fla. 413, 12 So.2d 109 (1943). Count VII, the disparagement of title claim, is governed by the two year provision in Fla.Stat.Ann. § 95.11(6). *See Carey v. Buyer*, 75 So.2d 217 (Fla.1954).

Although nonstatutory, the Florida accrual rule mirrors the federal rule. In Florida, the cause of action accrues when the injured party discovers or should have discovered the invasion of his rights. *See Lund v. Cook*, 354 So.2d 940 (Fla. 1st DCA 1978).

The court does not have a sufficient basis for determining whether Count IV, the unjust taking claim, is timely filed. The plaintiffs do not specifically allege which act of the defendants did the taking, much less when that act was committed. As a consequence, the court will dismiss this count, and grant the plaintiffs leave to amend this count to allege the precise action, and its corresponding date, that consummated the alleged taking.[9]

 Count V, the abuse of process count, is timely filed. The four year period prescribed in Fla.Stat.Ann. § 95.11(3)(*o*) applies. The plaintiffs' allege that the defendants abused the legal process in bringing their state court actions. An essential element of this tort is that the process be used

**8.** As noted *supra* at footnote 3, the defense of *res judicata* is available only to the defendant Monroe County. Fahrer and Sharit were not parties to the previous action.

**9.** As opposed to the federal constitutional taking claim here, the unlawful taking claim usually centers around one specific action that "took" the property. This action most likely is the rezoning of the property. No "continuing wrong" doctrine applies to this claim. As far as Florida law is concerned, the single act of rezoning "took" the property. This framework significantly differs from the federal analysis, which concentrates not only upon the act of taking but also upon the other actions that continue the taking. Accordingly, the unlawful taking claim here appears to be time-barred. The court, however, cannot so find because the complaint does not specifically state the precise act of taking. The court's dismissal, with leave to amend, is the appropriate ruling for now.

for some immediate harmful purpose. With only an initial view of the complaint, this claim appears untimely, for these state court actions commenced in 1982. Nonetheless, the complaint appears to allege other purportedly abusive tactics that occurred during these actions. At this stage, the court cannot determine precisely when the last of these abusive tactics ended, but believes that the last of the actions most likely ended on April 9, 1985, when the action finally was resolved. For purposes of resolving the motion to dismiss, the court will utilize this alleged date, and find the abuse of process claim to be timely filed.

In Count VII, the plaintiffs do not state with specificity which acts of the defendants disparaged the plaintiffs' title, or when these acts occurred. The court finds such facts to be material, and dismisses this claim without prejudice to amend this count.

In Counts VIII, IX, X and XI, the plaintiffs do not specifically allege the precise actions that caused the purported harms. The need for these acts, and the corresponding times in which they are alleged to have occurred, is manifest because the allegations in the complaint cover a twenty year time period. Accordingly, the court dismisses these claims without prejudice to amend.

> B. Causes Of Action For Malicious Prosecution And Abuse of Process Are Stated.

The defendants collectively move to dismiss the malicious prosecution and abusive process claims arguing that these counts do not state causes of action. After reviewing the Florida law governing these claims, the court disagrees.

As this court noted in *Miami Herald Publishing Company v. Ferre*, 636 F.Supp. 970, 977 (S.D.Fla.1985) a Florida malicious prosecution claim has six elements. These are:

(1) The commencement or continuance of a civil or criminal proceeding;

(2) The defendant commenced or caused the commencement of the proceedings;

(3) The bona fide termination of the civil or criminal proceedings in favor of the plaintiff;

(4) Lack of probable cause for the proceedings;

(5) The defendant acted with malice;

(6) Damage to the plaintiff.

*Id.*

■ The defendants claim that the plaintiffs have failed to adequately allege the malice claim. The defendants rely upon the final order of Circuit Judge Lester (attached as an exhibit to the complaint). The state Circuit Judge found that the defendants acted in good faith in enacting the rezoning. Defendants argue that this finding defeats the malicious element of this claim.

The court believes that the plaintiffs have sufficiently alleged a malicious prosecution claim to survive a motion to dismiss. Judge Lester's finding concerned matters relating to trust agreements and unjust enrichment and not the zoning proceeding.

■ For similar reasons the defendants' arguments with respect to the abuse of process claim fail. In *Bothmann v. Harrington*, 458 So.2d 1163, 1169 (Fla. 3d DCA 1984), the court established the elements necessary to state an abuse of process action. In particular the court noted that the use of the process must be for an immediate purpose other than that for which it was designed. The defendants argue that the finding of good faith in Judge Lester's order precludes a cause of action for abuse of process. As set forth above, the plaintiff allege that the defendants misused process in two lawsuits other than the one that gave rise to Judge Lester's order. A cause of action for abuse of process, therefore, is stated, and the court now addresses the state law immunities.

C. The State Law Immunities.

Both the defendant county and defendant Fahrer seek to dismiss Counts IV through XI based on two statutory immunities: Fla.Stat.Ann. § 768.28(9)(a) and § 768.28(6)(a). Fahrer also seeks to dis-

miss Count VII based on her alleged absolute privilege. The court now addresses these issues in turn.

■ At this pleading state, the court must draw all reasonable inferences from the complaint in favor of the plaintiff. Having done so, the court concludes that the immunity under Fla.Stat.Ann. § 768.28(6)(a) is inapplicable. The complaint alleges that the defendant Commissioners and Planners acted in their official capacities when allegedly harassing the plaintiffs. Accordingly, these allegations are outside the immunity established in § 768.28(9)(a). Under this statute, the State or its subdivisions are immune from liability for actions of an employee (or agent) committed outside the scope of the employment. These allegations, therefore, are sufficient to defeat the motion to dismiss based on the immunity stated in § 768.28(9)(a). Here the plaintiffs allege the officials acted outside the scope of their duties.

■ For similar reasons, Fla.Stat.Ann. § 768.28(6)(a) is inapplicable. Section 768.-28(6)(a) requires nothing more than statutory notice before an action can be maintained against the state, one of its agencies or one of its subdivisions. The county, however, is not entitled to statutory notice with respect to Count IV. In *Young v. Palm Beach County*, 443 So.2d 450, 451–452 (Fla. 4th DCA 1984), the court found the statutory notice requirement of § 768.28(6) to be inapplicable to an inverse condemnation claim. The court's reasoning centered around the fact that an inverse condemnation case did not sound in tort. *Id.* at 452. Count IV of the plaintiffs' complaint is essentially one for inverse condemnation and under the *Young* precedent, the county was not entitled to statutory notice. Similarly, Fahrer, as a County

Commissioner, is not entitled to statutory notice. The language of § 768.28(6)(a) only requires statutory notice for claims against the state, one of its agencies or one of its subdivisions. County Commissioners are not specifically included. Accordingly, the statutory notice requirements of § 768.28(6)(a) are inapplicable and the motion to dismiss, based on these arguments, will be denied.

**D. Punitive Damages.**

■ The defendants argue that under no circumstances should the County or Fahrer be liable for punitive damages.[10] They rely upon Fla.Stat.Ann. § 768.28(5), and argue that this statutory prohibition against punitive damages applies to both the County and Fahrer.

■ The plaintiffs agree that § 768.28(5) prohibits the recovery of punitive damages against the county. Indeed, the explicit language of § 768.28(5) prohibits such a recovery.

Section 768.28(5), however, does not prohibit the recovery of punitive damages against the defendant Fahrer. This statute does not refer to agents of the state, and the defendants have failed to cite any authority extending § 768.28(5) this far. Accordingly, the court will reject Fahrer's reasoning, and deny her motion to dismiss based on this reasoning.

**IV. Conclusion.**

After examining all the defendants' arguments, the court ORDERS AND ADJUDGES as follows:

1. This court's order denying several motions to dismiss dated July 7, 1988 is vacated;

---

**10.** With respect to the punitive damages demanded for the federal civil rights claims, two notations must be made. In the first instance, the plaintiff has voluntarily dismissed the punitive damage demand for the county's purported violation of § 1983. Secondly, punitive damages are recoverable against offending officers for their violations of the civil rights laws. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 252, 101 S.Ct. 2748, 2752, 69 L.Ed.2d 616

(1981). This recovery, however, is only against the offending officer in his or her individual capacity. *Id.* Because the plaintiffs have not demanded punitive damages against Fahrer in her individual capacity, the court will dismiss the demand for punitive damages against Fahrer. The court will also grant the plaintiffs leave to amend their complaint to include the defendant Fahrer in her individual capacity.

2. Counts II and III of the plaintiffs' complaint are DISMISSED as to all defendants;

3. Count I of the plaintiffs' complaint is DISMISSED with respect of the defendants Blair, Dolezal, Schloesser, Sorensen, Funke, Keefer, Curry, and Richards, Jr.;

4. Counts IV, VII, VIII, IX, X, and XI of the plaintiffs' complaint are dismissed as to all defendants.

5. The plaintiffs are hereby granted leave to amend their complaint with respect to Counts IV, VII, IX, X, and XI within thirty days.

6. Pursuant to the parties' agreement, Counts I, V, and VI DISMISSED with respect to all defendants as these claims relate to the plaintiffs' status as individual shareholders;

7. All other motions to dismiss are DENIED.

DONE AND ORDERED.