**NEW PORT LARGO, INC., Plaintiff,**

v.

**MONROE COUNTY, Defendant.**

No. 87–10043–CIV–KING.

United States District Court,
S.D. Florida.

April 1, 1994.

Michael R. Seward, Key Largo, FL, Maurice Jay Kutner, Miami, FL, Robert K. Burlington, Jeffrey B. Crockett, Aragon, Marin, Burlington & Crockett, P.A., Coconut Grove, FL, for plaintiff.

Alan G. Greer, Floyd, Pearson, Richman, Greer, Weil, Brumbaugh & Russomanno, P.A., Miami, FL, Randy Ludacer, County Atty., Key West, FL, James Hendrick, Morgan and Hendrick, Key West, FL, for defendant.

***ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND LIMITING LIABILITY TO THE PERIOD FROM SEPTEMBER 11, 1980 TO SEPTEMBER 9, 1982***

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon Defendant's Motion for Summary Judgment (D.E. # 321), Memorandum of Law in Sup-

port (D.E. # 322) and Statement of Material Facts (D.E. # 323), filed January 31, 1994. Plaintiff filed a Memorandum in Opposition on February 24, 1994, and on February 28, 1994, Defendant replied. The issues were fully briefed by the parties and oral argument held.

## I. BACKGROUND

### A. Case History

This case involves the rezoning of a certain parcel of property located in Key Largo, Florida. Plaintiff purchased the property on September 1, 1979. Two years prior to Plaintiff's purchase, the previous owner leased a portion of the property—the breakwater property—to Key Largo Oceanside Marina & Airport, Inc. to operate and maintain a landing strip and service small planes. The breakwater encompasses Lots 535 through 560. The terms of the lease extended five years until July 14, 1982.[1] When Plaintiff purchased the property, it took title subject to the existing lease. Thereafter, Plaintiff attempted to have the lease invalidated but was unsuccessful.[2]

At the time that Plaintiff purchased the property in September of 1979, the property was zoned RU–2 which was essentially a residential designation that allowed for a private airstrip on the property. On November 27, 1979, almost three months after Plaintiff's purchase, Monroe County's Planning and Zoning Department filed an application to change the zoning on Lots 535 through 560 from RU–2 (residential) to PA (private airport). The designation of PA zoning does not allow for residential development or use.[3] On January 24, 1980, Monroe County rezoned the lots in question PA. Plaintiff challenged the rezoning but, on September 11, 1980, the Monroe County Board of County Commissioners denied Plaintiff's appeal.[4] Plaintiff then filed suit in state court in October of 1980 seeking to invalidate the rezoning. Due to other pending litigation initiated by Defendant, Plaintiff's state court suit was stayed. Not until January 2, 1986—almost 5½ years later—did the state court resolve the issue in favor of Plaintiff, invalidating the rezoning of Lots 535 through 560 from RU–2 to PA.

In the meantime, on September 9, 1982 Plaintiff transferred the entire airport breakwater property to TFW, Inc. and Land Trust 741.

### B. Case Posture

Plaintiff filed suit in this Court in 1987 seeking damages for the temporary taking allegedly caused by the rezoning. In 1988, this Court disposed of this cause of action upon summary judgment by holding that Plaintiff's claims were barred by the statute of limitation. *New Port Largo, Inc. v. Monroe County*, 706 F.Supp. 1507 (1988), *vacated*, 985 F.2d 1488 (11th Cir.1993). Almost five years later, the Eleventh Circuit reversed this Court's decision, holding that the statute of limitations on Plaintiff's federal claims was tolled during the period in which Plaintiff litigated its underlying state claims.[5] *New Port Largo, Inc. v. Monroe County*, 985 F.2d 1488 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993). The case now returns to this Court on remand. Plaintiff moved for partial summary judgment which this Court denied on February 17, 1994. Defendant now seeks summary judgment in its favor.

---

1. At the expiration of the five year period, the lease would automatically renew for consecutive one year terms unless either party notified the other of its election not to continue the terms. Thus, the Lease contained an option at the end of the five year term.

2. On February 13, 1980, Plaintiff filed an Administrative Complaint seeking to block the renewal of the airport's license. Nonetheless, the Florida Division of Administrative Hearings recommended the granting of the airport's license and the Secretary of Transportation adopted it as a Final Order on December 17, 1980.

3. The only permitted use within a PA district is a private airport which is defined as an airport used primarily by the licensee but available for use by invitation of the licensee.

4. *See* Resolution No. 1980–234.

5. The Eleventh Circuit's holding was based on an appeal in a separate case that was decided after this Court's ruling but before consideration of the appeal in this case.

Defendant argues that the "uncontradicted factual record in this case conclusively demonstrates that Plaintiff has sustained no damages as the result of any action on the part of Monroe County"; therefore Monroe County contends that it is entitled to judgment as a matter of law. (Defendant's Motion for Summary Judgment, D.E. # 321, p. 1). Alternatively, if the Court finds a genuine issue of material fact to exist, Monroe County requests that the Court enter summary judgment limiting Plaintiff's claim for damages to the two month period from July 14, 1982, the expiration of the lease, to September 9, 1982, the date Plaintiff's sold the property.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only where it is shown that no genuine dispute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In ruling on the moving party's motion, the court must view the evidence in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Initially, the moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir.1993), *reh'g denied*, 16 F.3d 1233 (11th Cir.1994). To meet this burden, the non-moving party must go beyond the pleadings. If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the Court should refuse to grant summary judgment. *Id.*

## III. DISCUSSION

### A. Plaintiff's ownership interest in the property:

■ Before addressing the merits of Defendant's summary judgment arguments, the Court must first determine the temporal period of Plaintiff's ownership interest in the breakwater property. It is undisputed that only one with an ownership interest in the property at the time a taking occurred is entitled to receive compensation. It follows that the owner may be compensated only for the damages the accrued during the period of its ownership interest. Thus, a determination of the extent of Plaintiff's ownership interest in the property is crucial to the determination of what damages may be proved and over what period of time.

To decide this question, the Court must determine whether or not the transfer of the breakwater property to TFW and the Land Trust on September 9, 1982 constituted a "sale" by which Plaintiff relinquished all ownership interest in the property. Plaintiff claims that the 1982 "sale" was not an arm's length transaction but rather a transfer between the two principals of the plaintiff company. Charles Netter and Stuart Marr were the two sole principals of New Port Largo, Inc. According to Plaintiff, the 1982 transaction merely transferred thirteen lots to Charles Netter, in the name of a corporation (TFW, Inc.), and thirteen lots to Stuart Marr, in the name of a trust ("Marr Land Trust"). Since the two principals of the plaintiff company remained the "beneficial owners" of the property after the transaction, Plaintiff urges this Court to find that it never released its interest in the property and therefore is not barred from asserting damages after September 9, 1982.

■ The Court disagrees. Despite the fact that the principal owners remained the same, the transaction was held out to be at arms length and consideration was exchanged. Obviously, some benefit flowed to Marr and Netter from the transaction. To now essentially nullify the transaction would amount to this Court allowing parties to use legal formalities for the receipt of benefits without requiring them to accept the responsibilities and consequences that such legal formalities create. The Court will not legitimize such a distorted use of legal forms. The Court finds that the September 9, 1982 transfer was an arms length sale of the property that extinguished the ownership interests of Plaintiff. Therefore, Plaintiff's own-

ership interest extends from September 1, 1979, the date of purchase, to September 9, 1982, the date of the sale to TFW and the Land Trust.

### B. Summary Judgment on the issue of causation:

Turning now to the substance of summary judgment motion before the Court, the Court notes that it previously reserved the issue of liability for trial. In the Court's Order Denying Plaintiff's Motion for Partial Summary Judgment, the Court found that factual disputes exist regarding the County's purpose for the rezoning and Plaintiff's expectations and reliance at the time it purchased the property. These are genuine issues of material fact that preclude summary judgment on the issue of liability. Although Defendant takes the position that no "taking" occurred when the County rezoned the disputed property PA, for purposes of the summary judgment motion before the Court, Defendant argues that even assuming Defendant's liability, Defendant is entitled to summary judgment because Plaintiff cannot prove causation.

Essentially, Defendant takes the position that it was the airport lease on the property, not the County's rezoning of the property, that prevented Plaintiff from developing the land because even if the County had not rezoned the property, the lease would still have precluded any residential development on the property. Therefore, Defendant contends, Plaintiff cannot prove causation prior to the expiration of the lease. Defendant further argues that Plaintiff cannot show causation *after* the expiration of the lease and is, thus, entitled to no damages. Although the lease expired on July 14, 1982, it is undisputed that the tenant, the airport operator, refused to vacate the property and was not finally evicted until March 1985. In Defendant's view, during the period from July 14, 1982—the date the lease expired—until September 9, 1982—the date the property was sold—any damages that resulted were caused by the tenant's attempt to hold over rather than by the PA zoning. Finally, Defendant argues that Plaintiff cannot prove damages beyond the date it sold the proper-

ty, September 9, 1982, since after that date Plaintiff no longer retained an interest in the property. Accordingly, Defendant asserts that Plaintiff can prove no damages for the entire period of the purported taking and therefore asks the Court to grant summary judgment in its favor.

In considering Defendant's motion, the Court will not decide the issue of liability. However, for purposes of determining the appropriateness of summary judgment, the Court will assume that the purported taking occurred as of September 11, 1980, the date the County Commission denied Plaintiff's appeal of the rezoning.

### 1. During the term of the lease:

■ Viewing the evidence in the light most favorable to Plaintiff, as the Court must, the Court cannot find that as a matter of law Plaintiff can prove no damages during the period that the lease on the property remained in effect. While Defendant is correct in its assertion that even without the PA zoning on the property, Plaintiffs could not have developed the property during the term of the lease, it does not follow that, as a matter of law, the rezoning of the property caused no damages. What the zoning did, that the lease could not do, was to place what amounted to a "permanent" bar on the residential development of the property, thereby hindering the sale of the property for any use other than an airport. The lease, on the other hand, simply created a temporary restriction on the use of the land. It did not bar Plaintiff from subdividing the property and selling lots to be used for residential purposes in the future. But for the PA zoning, the property, theoretically, could have been used as residential property on the day that the lease expired. Therefore, theoretically, Plaintiff could have sold the property during the term of the lease for the purpose of residential development to begin after July 14, 1982. Once the County rezoned the property, however, the future ability to develop the property as residential was extinguished.

The Court recognizes that this theory of damages is speculative and would not permit recovery on the theory alone. In order for

Plaintiff to avoid summary judgment it must establish a material issue of fact as to causation. To do so, Plaintiff must provide some factual evidence tending to show that, but for the rezoning, it would have sold some of the property. In other words, Plaintiff must offer some evidence that the rezoning, not the lease, prevented the sale of the property during the pendency of the lease. Evidence of at least one buyer who was willing to purchase the property subject to the lease but was not willing to buy the property subject to the PA zoning would be sufficient to defeat summary judgment.

Plaintiff has filed five contracts for the sale of lots that were entered into but never closed. The first contract, known as the Fernandez contract, was signed prior to the expiration of the lease and was conditioned on the settlement of the suit between Plaintiff and Defendant. However, since the contract was for the sale of lots not included in the rezoned area in dispute, the contract has no bearing on the issue of causation.[6] The second and third contracts name Angel and Rosa de la Torre as the buyers. Although these contracts are for the sale of lots contained in the airport breakwater, Plaintiff is not the seller. At the time that these contract were entered, Plaintiff had already sold the property to TFW and the Land Trust.[7] Indeed, both contracts plainly state that TFW, not Plaintiff, was the designated seller. While these contracts may be evidence that *TFW* lost opportunities to sell individual lots due to the PA zoning, it is not evidence that *Plaintiff* suffered any damage, as Plaintiff had already sold the property by the time these contracts were entered.[8]

The fourth contract, the Hinds contract, is similarly flawed. Although Plaintiff is the named seller on the face of the contract,[9] the agreement was not executed until September 28, 1982, over two weeks after Plaintiff sold the entire property to TFW and the Land Trust.

The fifth contract is the only one providing evidence that Plaintiff could have sold the disputed property subject to lease if the property had not been rezoned PA. The contract was executed of August 28, 1982, prior to the sale of the property to TFW and the Land Trust; Plaintiff is the named seller; and the contract specifies that the sale is subject to the lot being rezoned residential. Although this contract was never actually signed by Plaintiff, it is sufficient that it was executed by the *buyer* for purposes of showing that there existed a buyer willing to purchase the property during the pendency of the lease, but for the PA zoning. This is not to say that this single contract would form a sufficient basis for establishing damages. The Court will not address that issue at this point. The Court is merely holding that for purposes of meeting Plaintiff's burden of proof to preclude summary judgment, the contract is sufficient to establish that a genuine issue of material fact exists regarding whether or not Plaintiff could have sold the property subject to the lease but for the rezoning. Therefore, summary judgment will be denied.

### 2. After the expiration of the lease:

Having found a material issue of fact to exist it is not necessary to determine whether damages can be shown for the period following the expiration of the lease. The Court merely notes, that as previously discussed, Plaintiff can establish no damages beyond the date it sold the entire property and relinquished its interest therein. And, as discussed below, the Fry contract creates a genuine issue of fact regarding the dam-

6. The Fernandez contract was for the sale of lot 439. The breakwater property included only lots 535 through 560.

7. The first contract is dated September 21, 1982, twelve days after Plaintiff sold the property to TFW and the Land Trust. The second contract is not dated but it specifically names TFW as the seller. Therefore, it is reasonable to assume that this contract was drafted after the September 8, 1982 sale.

8. TFW and the Land Trust are not parties to this suit. Nevertheless, it is doubtful that any of them could claim damages from Monroe County since the rezoning did not occur during their ownership and they purchased the property with knowledge of the PA zoning.

9. Specifically, the contract designates "New Port Largo, Inc., its successors or assigns" as the seller.

ages provable during the period after the expiration of the lease but prior to the sale of the property.

### B. *Summary Judgment on the period of liability:*

The fact that Plaintiff has provided evidence of at least one buyer who would have purchased the property subject to the lease but for the rezoning is also sufficient to defeat Defendant's alternative request for summary judgment limiting the period of liability. Defendant argues that at the most liability should be confined to the two month period of time between July 14, 1982, the date the lease expired, and September 9, 1982, the date Plaintiff sold the property. This argument is premised on Defendant's belief that no damages can be shown during the period of time in which the lease was effective. The Court has already rejected that argument. Once the rezoning occurred, assuming that it is later found to constitute a taking, Defendant's liability began to run. The simultaneous existence of the lease does not prevent Plaintiff from establishing damages caused by the rezoning.

This finding implicitly rejects Defendant's additional argument that any damages accruing to Plaintiff after the lease expired were caused by the tenant's attempt to hold over on the lease, not by the PA zoning. As this Court previously stated, the existence of at least one willing buyer is sufficient evidence to raise a genuine issue of material fact as to whether Plaintiff could have sold the property while the lease was operative. Assuming that Plaintiff could have sold the property while the lease was in effect, it follows that it could also have sold the property after the lease expired but while the tenant remained illegally thereon. Thus, the Court cannot find, as a matter of law, that any damage caused after the lease expired and prior to Plaintiff's sale of the property was caused by the tenant rather than the zoning.

Plaintiff has raised an genuine issue of material fact regarding the effect that the rezoning had on the salability of the property. If it is found at trial that the rezoning constituted a "taking", the period of liability would thus run from the date of rezoning— September 11, 1980—to the date of sale— September 9, 1982.

### IV. CONCLUSION

As discussed above, the Court cannot find, as a matter of law, that Plaintiff can prove no damages resulting from the County's rezoning of the breakwater property; therefore the Court must deny summary judgment. If, at trial, it is determined that the rezoning did constitute a taking, the period of liability will begin running on the date of rezoning (September 11, 1980) and terminate on the date Plaintiff sold the property (September 9, 1982). While the simultaneous existence of the lease with the PA zoning will not limit the liability period, the Court notes that it may affect the amount of damages that Plaintiff can prove. That question however is reserved for trial.

Thus, the issues remaining, to be determined at trial, are:

(1) whether the County's rezoning of the property to PA constituted a taking, and

(2) if so, the extent of monetary damages incurred by Plaintiff, as a result of the PA zoning, during the period from September 11, 1980 to September 9, 1982.

For reasons stated herein, it is therefore

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, DENIED. It is further

ORDERED and ADJUDGED that the period of liability, if liability is found to exist, will run from September 11, 1980 to September 9, 1982.

DONE and ORDERED.